**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually and in his Capacity as Executive Director Of Rhode Island Affiliate, American Civil Liberties Union, Inc.,
Plaintiffs

v.

ROGER N. BEGIN, in his Official Capacity as Chairman of the Rhode Island Board of Elections, and THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, in their Capacities as Commissioners of the Rhode Island Board of Elections and GEORGE BOWEN, in his Official Capacity as Acting Executive Director,
Defendants

THE GREATER PROVIDENCE CHAMBER OF COMMERCE,

Intervenor

C.A. No. 04-487T

**INTERVENOR, THE GREATER PROVIDENCE CHAMBER OF COMMERCE, TRIAL MEMORANDUM**

James W. Ryan (#4042)
PARTRIDGE SNOW & HAHN LLP
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

# TABLE OF CONTENTS

**Page**

I. Introduction .......... 1

II. Background .......... 2

III. Argument .......... 7

A. The Chamber is not "Acting in Concert" When it Solicits its Members for Financial Support in Connection With Ballot Referendum Issues. .......... 7

B. There is no Compelling State Interest for this Restriction on Expenditures .......... 12

C. The Administrative Burden Created. .......... 14

IV. Conclusion .......... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Austin v. Michigan Chamber of Commerce,* 494 U.S. 652 (1990) .......... 12
*Buckley v Valeo,* 424 U.S. 1 (1976) .......... 8, 12, 16
*Citizens Against Rent Control v. City of Berkeley,* 290, 454 U.S. 290, 299 (1981) .......... 14
*Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541 (R.I. 1989) .......... 10
*FEC v. Mass. Citizens for Life*, 479 U.S. 238 (1986) .......... 15
*First National Bank v Bellotti*, 435 U.S. 765 (1978) .......... 4, 13
*Vote Choice, Inc. v. DiStefano*, 814 F. Supp. 186 (D.R.I. 1992) .......... 4, 15
*Vote Choice v. DeStefano*, 814 F. Supp. 195 (D.R.I. 1993) .......... 6, 14

**Statutes**

R.I. Gen. Laws § 17-25-10(b) .......... passim
R.I. Gen. Laws § 17-25-10.1(h) and (j) .......... 7
R.I. Gen. Laws § 17-25-23 .......... 9, 10, 11
R.I. Gen. Laws § 17-25-3(8) .......... 7, 8, 9, 10
R.I. Gen. Laws § 17-25-15 .......... 12
R.I. Gen. Laws § 17-25-10(a) .......... 7
R.I. Gen. Laws § 17-25-5(c) .......... 2

**Other Authorities**

Advisory Opinion No. 95-01 .......... passim
Advisory Opinion No. 96-01 .......... 4, 5, 6
Black's Law Dictionary, 7th Edition (1999) .......... 10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually and in his Capacity as Executive Director Of Rhode Island Affiliate, American Civil Liberties Union, Inc.,<br>Plaintiffs<br><br>v.<br><br>ROGER N. BEGIN, in his Official Capacity as Chairman of the Rhode Island Board of Elections, and THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, *in their Capacities* as Commissioners of the Rhode Island Board of Elections and GEORGE BOWEN, in his Official Capacity as Acting Executive Director,<br>Defendants<br><br>THE GREATER PROVIDENCE CHAMBER OF COMMERCE,<br><br>Intervenor | C.A. No. 04-487T |

**INTERVENOR, THE GREATER PROVIDENCE CHAMBER**
**<u>OF COMMERCE, TRIAL MEMORANDUM</u>**

## I. INTRODUCTION

Intervenor, The Greater Providence Chamber of Commerce (the "Chamber") submits this Trial Memorandum with attached exhibits pursuant to an agreement of the parties to submit this matter to the Court for decision on the papers. For purposes of this submission the parties have agreed that the documents produced in discovery as well as the parties' respective pleadings and interrogatories are deemed admissible. To the extent that constitutional issues are raised by the pleadings but not addressed herein, the Chamber hereby adopts and joins in legal

arguments submitted by the Rhode Island ACLU in support of parallel counts as set forth in Plaintiff's Complaint filed in this matter on or about November 18, 2004.

## II. BACKGROUND

Since 1868 the Chamber has existed as a non-profit corporation whose purpose is to provide a forum for its members to discuss and act on issues of the day, such as ballot questions affecting commerce and business in Rhode Island. As such, the Chamber receives dues from its membership, which currently exceeds 3,300 business and other organizations, large and small. On occasion, the Chamber seeks to fulfill its duty to its members by representing the position of the membership on ballot questions through expenditures made to influence the approval or rejection of such questions, and to do so, it may seek funds from its members.

In March of the 1995, the Chamber requested an advisory opinion pursuant to Section 17-25-5(c) of the Rhode Island Campaign Contributions and Expenditure Reporting Act (the "Act") regarding the obligation of the Chamber under R.I. Gen. Laws § 17-25-10(b) (Exhibit A). In July, the Rhode Island Board of Elections (the "Board") issued Advisory Opinion No. 95-01 ("1995 Opinion"), in which it concluded that a non-profit corporation would be acting in violation of the prohibition on "in concert" expenditures contained in R.I. Gen. Laws § 17-25-10(b) if such a corporation solicited its members for contributions to fund a campaign initiative with respect to a ballot referendum question. (Exhibit B). At that time the Board set forth its own test to determine whether or not it would deem a person to be "acting in concert" with another person for the purposes of § 17-25-10(b). The net result of the 1995 Advisory Opinion was that if the Chamber sought financial support from its members to advocate a position on a ballot referendum question it would be deemed to be "acting in concert" within the meaning of § 17-25-10(b) and therefore subject to the reporting requirements of the Act.

In the 1995 Opinion, the Board announced that it would deem a person to be acting "in concert" with another for purposes of §17-25-10(b) if:

> "(a) there is any arrangement, coordination, or direction with respect to the expenditure between the person making the expenditure and any other person; (b) if, during the election cycle, the person making the expenditure is, or has been authorized to raise or expend funds on behalf of another person to be used to aid or defeat a ballot question, or if the person making the expense will be receiving any form of compensation or reimbursement from any other person; (c) the person making the expenditures communicated with, advised or counseled other persons on the plans, projects, and needs relating to the aiding or defeating of the election of the ballot question; (d) the person making the expenditures retains the professional services of any individual or other person also providing those services to others in connection with the aiding or defeating of the same ballot question; (e) the person making the expenditures communicated or consulted at ant sic] time during the election cycle about the person's plans, projects, or needs with any other entity, or officer, director, or employer or any other entity that has made, or intends to make expenditures to aid or defeat the ballot question on the same side as the person making the expenditure or any person whose professional services had been retained by another entity that has made or intends to make expenditures to aid or defeat the same ballot question; and (f) the expenditure is based on information provided to the person making the expenditure, directly or indirectly by others making similar expenditures about the person's plans, projects, or needs provided that the other person is aware that the other person has made, or is planning to make expenditures expressly to advocate or defeat the ballot question on the same side as the person making the expenditure." (See Exhibit B, page 2).

In August of 1995 the Chamber requested that the Board reconsider its earlier ruling and find that the Chamber is not prohibited from seeking general support from its own members for such expenditures and thus not subject to the restrictions set forth in § 17-25-10(b) of the Act. (Exhibit C). At that time, the Chamber pointed out to the Board that courts have upheld laws regulating political donations and expenditures and thereby intruding on rights under the First Amendment only when those laws and regulations have as their sole object the prevention of corruption of elected public officials. The Chamber pointed out that ballot

referenda do not involve issues of candidate corruption-referenda, instead, are held on issues - not candidates for political office! The risk of corruption perceived in cases involving candidate elections is simply not present in a popular vote on a public issue. Statutes and rules requiring corporations to filter contributions and expenditures in connection with ballot referenda through a Political Action Committee ("PAC") impose a significant administrative burden and cannot withstand constitutional challenge under the First and Fourteenth Amendments. *Vote Choice, Inc. v. DiStefano*, 814 F. Supp. 186 (D.R.I. 1992) (*Vote Choice I*).

The Chamber pointed out that the United States Supreme Court had addressed this same issue twenty years earlier in *First National Bank v Bellotti*, 435 U.S. 765 (1978) which had clearly held that the risks of corruption which justify the regulation of free speech in context of a general election simply do not apply when considered ballot questions.

> Referendums are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections ... simply is not present in popular vote on a public issue. To be sure, corporate advertising may influence the outcome of the vote; this would be its purpose. The fact that the advocacy may persuade the electorate is hardly a reason to suppress it.
>
> (Emphasis added)

*Bellotti* at 790.

After receiving a request from the Chamber to reconsider the 1995 Opinion, the Board agreed to reconsider its position and held a public hearing to hear the concerns of others with the 1995 Opinion at which the Chamber appeared and expressed its concern. (Exhibit D).

On May 29, 1996, in response to concerns expressed by the Chamber and other groups including the Rhode Island American Civil Liberties Unions ("RIACLU"), the Board reversed course and issued Advisory Opinion No. 96-01 ("1996 Opinion"),which, effectively, reversed the 1995 Opinion. (Exhibit E). The 1996 Opinion concluded that the Chamber and its

members were a single person and, as such, would not be "acting in concert" if the Chamber solicited its members for money to support a ballot question campaign initiative and therefore not acting in violation of § 17-25-10(b) of the Act.

In the 1996 Opinion Chairman Begin reviewed the history of this issue and concluded:

> [t]he Chamber of Commerce is not an organization of individuals brought together for the purpose of advocating any particular ballot question. Rather, it is a 130 year old organization of businesses collectively advocating issues which serve the best interests of those businesses that are members. The Board further finds that the Chamber is a non-profit organization which was not formed for the purpose of advocating one particular point of view on a ballot question, but rather, is a pre-existing entity that simply wishes to solicit its members to advocate positions on a given ballot questions, and which the majority of its members have authorized its executive board to do.

Exhibit E, p.3.

In the 1996 Opinion the Board thus found that when the Chamber acted in connection with its own members regarding ballot initiatives it acted as a single entity and would not be considered to be "acting in concert" in violation of the prohibitions set forth in § 17-25-10(b) of the Act.

On the heels of the 1996 Opinion the Board, which had emphasized in the 1996 Opinion that the Chamber was a preexisting entity "not formed for the purpose not formed for the purpose of advocating one particular point of view on a ballot question," inexplicably, the Board extended the 1996 Opinion to the Rite Track Foundation, an entity created solely for the purpose of advocating one particular point of view on a ballot question. (Exhibit F).

On August 11, 2004, the Board's legal counsel, Raymond A. Marcaccio, Esq., sent the commissioners of the Board a legal memorandum entitled "Review of Advisory

Opinions Pertaining to Expenditures for the Advocacy of Ballot Questions," ("2004 Memo"). (Exhibit G).

The 2004 Memo suggested that a corporation or other entity soliciting contributions from its members to fund a campaign initiative for a ballot question should be deemed to be "acting in concert" and "subject to PAC reporting requirements to disclose both contributions and expenditures." The 2004 Memo concluded by recommending that the Board "subject corporations, associations, or other entities receiving funds from multiple sources, to be expended for the purpose of advocating the passage or defeat of a ballot question, to the disclosure and reporting requirements of the Act. To follow the recommendation of counsel the Board would have to reinstate the 1995 Opinion and rescind the 1996 Opinion "and any Opinion previously issued relying on [the 1996 Opinion]." (Exhibit G, p. 6).

At a meeting on August 11, 2004, the Board accepted the recommendations outlined in the 2004 Memo, reinstating the 1995 Opinion and rescinding the 1996 Opinion.

Based on the reinstitution of the 1995 Opinion, the Chamber would be deemed to be "acting in concert," in violation of §17-25-10(b) if, among other things, the Chamber communicates with another person, or potentially one another or other Chamber members or employees, about "the plans, projects, and needs relating to the aiding or defeating of the election of [a] ballot question" or makes an expenditure having obtained, directly or indirectly, information from another person about potentially similar expenditures. (Exhibit B, p. 2).

Without such contributions and expenditures, the Chamber will be limited by rules set forth in the Act regarding campaign contributions and expenditures and unable to effectively advocate its position with respect to ballot questions.

The analysis in the 1995 Opinion and the 2004 Memo is contrary to the Board's own argument in *Vote Choice v. DeStefano*, 814 F. Supp. 195, 198 (D.R.I. 1993) (*Vote Choice*

*II*) that induced this Court to hold that corporations are not required to form PACs to make contributions or expenditures with respect to ballot questions.

Also, this interpretation flies in the face of the plain language of the Act which defines a corporation as a "person" § 17-25-3(8).

The Chamber plans to solicit its members and the public at large for contributions and also to make expenditures for the support or defeat of ballot referendum questions in future elections and to advocate on behalf of its members on issues of common concern as it has done in prior elections.

The Chamber would be unable to comply with the PAC reporting requirements of the Act as set forth in R.I Gen. Laws § 17-25-10(b) and § 17-25-10.1(h) and (j) and would be effectively silenced on issues of utmost concern to its members.

## III. ARGUMENT

### A. The Chamber is not "Acting in Concert" When it Solicits its Members for Financial Support in Connection With Ballot Referendum Issues.

A straightforward reading of the Act reveals that in Rhode Island contributions to candidates and political campaigns - as opposed to personal expenditures on behalf of - are strictly regulated and must be channeled through designated intermediaries who, in turn, are obligated to report - and thereby disclose - such support.

Section 17-25-10(a) provides:

> "No contribution shall be made or received, and no expenditure shall be directly made or incurred, to support or defeat a candidate or to advocate the approval or rejection of any question in any election except through:
>
> (1) The duly appointed campaign treasurer, or deputy campaign treasurers, of a political party committee;
>
> (2) The duly appointed campaign treasurer or deputy campaign treasurers of the candidates; or

(3) The duly appointed campaign treasurer, or deputy campaign treasurers, of a political action committee."

(Emphasis added)

Limitations on contributions to a candidate or campaign organization and the disclosure thereof have been held to be justified by the "weighty interests" served by such restrictions. These include the dangers of *quid pro quo* arrangements and the appearance of corruption. It has been held that such limitations involve little direct restraint on that person's political communication for it permits the "symbolic expression of support" and ultimately involves speech by someone other than the contributor. *Buckley v Valeo*, 424 U.S. 1, 29 (1976).

The law, however, is markedly different with regard to personal expenditures. The personal expenditure of funds is considered to be a fundamental right. Limitations on campaign expenditures are unconstitutional because they place substantial and direct restrictions on the ability of candidates, citizens and associations to engage in political expression otherwise protected under the First Amendment. Restrictions on access to the electoral process must survive exacting scrutiny. A restriction can be sustained only if it furthers a "vital" governmental interest that is achieved by a means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity. *Buckley*, 424 U.S. at 64 -- 65.

The Act recognizes this distinction presuming that such personal expenditures are allowed except under very limited circumstances. However, the Board's interpretation of § 17-25-10(b) contradicts the plain language of the Act which defines a corporation as a "person" in § 17-25-3(8).

Section 17-25-10(b) provides:

> "It shall be lawful for any person, not otherwise prohibited by law and <u>not acting in concert with any other person or group</u>, to expend personally from that person's own funds a sum

> which is not to be repaid to him or her for any purpose not prohibited by law to support or defeat a candidate or to advocate the approval or rejection of any question. * * * * Whether a person is 'acting in concert with any person or group' for purposes of this subsection shall be determined by application of the standards set forth in § 17-25-23."
>
> (Emphasis added).

Of note, Section 17-25-10(b) is phrased in the context of a "person" which, under the Act, is a defined term.

Section 17-25-3(8) provides:

> "Person" means an individual, partnership, committee, association, corporation, and any other organization
>
> (Emphasis added).

Other than "an individual" most of the entities identified as falling within the Act's definition of "person" are associative entities which, by their very nature, involve more than a single individual or entity working towards a common purpose. Indeed, the definition of "person" goes so far as to include "any other organization" which, presumably, includes other organizations whether formally organized or not.

> "Committee" A group of people appointed or elected to consider, determine, or manage a matter.
>
> "Association" A gathering of people for a common purpose; the persons so joined. (Emphasis added).
>
> "Corporation" An entity (usu. a business) having authority under law to act as a single person distinct from the shareholders who own it and having rights to issue stock and exist indefinitely; a group or succession of persons established in accordance with legal rules into a legal or juristic person that has legal personality distinct from the natural persons who make it up, exists indefinitely apart from them, and has the legal powers that its constitution gives it.
>
> "Organization" A body of persons (such as a union or corporation) formed for a common purpose. (Emphasis added).

Black's Law Dictionary, 7th Edition (1999). (Emphasis added).

Presumably, the General Assembly understood the meaning of these terms when it enacted the Act and intended that every word of the enactment have a useful purpose and to have force and effect. *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I. 1989).

Despite the Board's contorted rationale in the 1995 Opinion the Chamber, as a corporate entity, clearly falls under the definition of "person" as set forth in § 17-25-3(8) and cannot act "in concert" with itself.

Further examination of § 17-25-10(b) reveals that whether or not a person is to be considered to be "acting in concert with any person or group" is be determined by application of the standards set forth in § 17-25-23.

Section 17-25-23 provides:

> For the purposes of §§ 17-25-19 and 17-25-20, any funds expended by a person, committee of a political party, or political action committee to directly influence the outcome of the electoral contest involving the candidate shall be considered a contribution received by or an expenditure made by the candidate for general office, or if one or more of the following relationships between the candidate and the person, committee of a political party, or political action committee is present:
>
> (1) There is any arrangement, coordination, or direction with respect to the expenditure between the candidate or the candidate's agent and the person making the expenditure;
>
> (2) In the same election cycle, the person making the expenditure, including any officer, director, employee, or agent of the person, is or has been authorized to raise or expend funds on behalf of the candidate or the candidate's authorized committees, or is or has been an officer of the candidate's authorized committees, or is or has been receiving any form of compensation or reimbursement from the candidate, the candidate's authorized committees, or the candidate's agent;

(3) The person making the expenditure, including any officer, director, employee, or agent of the person, has communicated with, advised, or counseled the candidate or the candidate's agents at any time on the candidate's plans, projects, or needs relating to the candidate's pursuit of election to general office in the same election cycle, including any advice relating to the candidate's decision to seek election to general office;

(4) The person making the expenditure retains the professional services of any individual or other person also providing those services to the candidate in connection with the candidate's pursuit of election to general office in the same election cycle, including any services relating to the candidate's decision to seek election to general office;

(5) The person making the expenditure, including any officer, director, employer, or agent of the person, has communicated or consulted at any time during the same election cycle about the candidate's plans, projects, or needs relating to the candidate's pursuit of election to general office, with:

(i) Any officer, director, employee, or agent of a party committee that has made or intends to make expenditures or contributions, in connection with the candidate's campaign; or

(ii) Any person whose professional services have been retained by a political party committee that has made or intends to make expenditures or contributions;

(6) The expenditure is based on information provided to the person making the expenditure directly or indirectly by the candidate or the candidate's agents about the candidate's plans, projects, or needs; provided, that the candidate or the candidate's agents are aware that the other person has made or is planning to make expenditures expressly advocating the candidate's election; or

(7) The expenditure is made by a person with the intention of seeking or obtaining any governmental benefit or consideration from the candidate by reason of the expenditure.

§ 17-25-23 refers <u>only</u> to candidates for general office and provides a test for determining whether expenditure by a person, political party committee or political action committee will be considered to be a contribution received by, or expenditure made by, a

candidate for general office. All of the tests set forth under § 17-25-23 are based on the relationship between the candidate for general office or the candidate's committee or agent and the person, political party committee or PAC making the expenditure or contribution. They have no relevance whatsoever to ballot referenda advocacy.

§ 17-25-23 speaks entirely to influencing a candidate running for election and describes only those activities which are considered contributions or expenditures made to or received by such candidates. § 17-25-23 does not even refer to "in concert" activities for the purposes of a ballot question. Therefore, § 17-25-23 provides no meaningful guidance for determining what a person or corporation has to do to be acting "in concert" with another person or group with regard to ballot questions. Corporations are left to guess what it all means.

The wholesale prohibition on "in concert" expenditures violates the First Amendment. "The First Amendment protects political association as well as political expression." *Buckley*, 424 U.S. at 15. Any regulation burdening political speech must be narrowly tailored to advance a compelling state interest. *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 657 (1990).

**B. There is no Compelling State Interest for this Restriction on Expenditures.**

The practical effect of the decision to reinstate the 1995 Opinion is far reaching. This interpretation of the acting in concert language from R.I. Gen. Laws § 17-25-10(b) severely restricts the manner in which the Chamber and other similarly situated associative organizations can approach ballot questions.

Effectively, despite constitutional law clearly to the contrary, such an interpretation requires the formation of a political action committee ("PAC") pursuant to the provisions of R.I. Gen. Laws § 17-25-15 to allow members of the Chamber and other similarly situated groups to advocate a position on a ballot question. Formation of a PAC thus requires,

amongst other things, that (i) no corporate contributions can be raised by the PAC; (ii) no individual contributions may be received by the PAC which in the aggregate exceed more than $1,000 in a calendar year; and (iii) that all contributions received must be reported including the name, address, and place of employment of all those contributing more than $100 in a calendar year. In addition, fines of up to $100 per violation may be assessed by the Board for violations of the Act and any person who knowingly violates the Act may be subject to fines of up to $1,000.

A major purpose of the First Amendment of the United States Constitution is to protect the free discussion of governmental affairs. It is the type of speech indispensable to decision-making in a democracy, and this is no less true because the speech comes from a corporation rather than an individual. The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual. *Bellotti*, 435 U.S. at 777.

Where a prohibition is directed at speech itself, and the speech is intimately related to the process of governing, the state may prevail only upon showing a subordinating interest which is compelling, and the burden is on the government to show the existence of such an interest. Even then, the state must employ means closely drawn to avoid unnecessary abridgment. *Bellotti*, 435 U.S. at 786.

There has been no demonstration of any compelling state interest requiring this type of restraint on First Amendment rights. Indeed, the justification seems to derive from the state of confusion which the Board of Election has created on its own and failed to remedy over

time.[1] Indeed, the sole justification for the infringement is a general desire to promote "disclosure".

> Board of Elections Interrogatory Response No. 4
>
> The Board is without sufficient information to assess whether or not voters did not have adequate information with respect to any particular referenda question since 1994. The Board further states that it has an interest and an obligation to promote disclosure of contributions and expenditures to voters to the extent permissible and required under the election laws .... (Exhibit G).

There is simply no evidence that such a strained interpretation of § 17-25-10(b) is needed to prevent corruption or advance any other compelling state interest. Whatever state interest there may be in prohibiting contributions to other persons or groups, there is no significant or public interest in curtailing debate and discussion of a ballot measures. *Citizens Against Rent Control v. City of Berkeley*, 290, 454 U.S. 290, 299 (1981). Thus, the prohibition of "in concert" contributions in § 17-25-10(b) constitutes an infringement on the Chamber's First Amendment activities.

**C. The Administrative Burden Created.**

Reinstatement of the 1995 Opinion will, effectively, require the formation of a PAC. Although the monetary limitations on expenditures as set forth in the statute were declared unconstitutional in *Vote Choice II* this will significantly impede accomplishment of the Chambers' mission and other similarly situated organizations. This decision makes it virtually impossible for the Chamber to seek funds from its members to fund any expenditure to advocate its positions on ballot questions.

---

[1] On March 7, 2005 Chairman Roger N. Begin was quoted in the *Providence Journal* as saying that the present statute is "ambiguous and impractical, resulting in an unenforceable law."

The Chamber will be unable to comply with PAC reporting requirements as described in the 2004 Memo because it will be impossible to identify and segregate contributions for ballot question advocacy from contributions for the Chamber's other activities. Even if compliance were possible in practice, the expenses and administrative burden necessary for compliance would be prohibitively high.

Requiring the formation of a PAC imposes a significant burden on the Chamber's First Amendment right to advocate its position on important issues. *Vote Choice I* (statute requiring corporations to filter contributions and expenditures through a PAC cannot withstand constitutional challenge under the 14th Amendment). See also *FEC v. Mass. Citizens for Life*, 479 U.S. 238 (1986).

The ultimate irony of the current situation is that a single large corporation - such as an interested casino operator – would be allowed to spend its own funds in unlimited amounts to advocate the approval or rejection of a ballot question while the Chamber, if it seeks contributions from its own membership for the same purpose, is considered to be acting in concert and subject to all statutory restrictions.

> Therefore, if the Chamber seeks financial support from its members with mailings or personal contact requesting the funds for the purpose of advocating or rejecting the Chamber's position regarding a ballot question position then that would be deemed to be acting in concert. If the Chamber seeks support in a general mailing <u>not advocating a particular position</u> that would not be considered acting in concert. ... If the Chamber is deemed acting in concert with any other person, the Chamber's activities would not fall within the exception for independent expenditures contained in 17-25-10 (b) and, therefore, the Chamber may not make the expenditures (other than independent expenditures) because to do so would violate the provisions of RIGL 17-25-10.1(j).

<u>Exhibit B</u>, pp. 1-2.

Finally, close examination of the specificity of a statutory limitation is required where the legislature imposes criminal penalties in an area of constitutional significance. The test is whether the language of the regulation affords the precision of regulation that must be the touchstone in an area so closely touching our most precious freedoms. *Buckley*, 424 U.S. at 41.

## IV. CONCLUSION

For the reasons stated above, the Chamber respectfully requests that the Court enter judgment in its favor and grant the relief requested in the Intervenor's Complaint.

THE GREATER PROVIDENCE
CHAMBER OF COMMERCE, Intervenor

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

James W. Ryan (#4042)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: October 31, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF JUDGMENT IN FAVOR OF INTERVENOR, THE GREATER PROVIDENCE CHAMBER OF COMMERCE was mailed, postage prepaid, on this 31 day of October, 2005 to:

Raymond A. Marcaccio, Esq.
Christine M. Curley, Esq.
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

Howard Merten, Esq.
PARTRIDGE SNOW & HAHN LLP
180 South Main Street
Providence, RI 02903

823873_1/247-85