**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RECEIVED
NOV 23 2005
Property of U.S. District Court
District of Rhode Island

**RHODE ISLAND AFFILIATE AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually and in his Capacity as Executive Director of Rhode Island Affiliate, American Civil Liberties Union, Inc.**
***Plaintiffs***

**Vs.** **C.A. No. 04-487T**

**ROGER N. BEGIN, in his Official Capacity as Chairman of the Rhode Island Board of Elections, and THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, in their Capacities as Commissioners of the Rhode Island Board of Elections and GEORGE BOWEN, in his Official Capacity as Acting Executive Director**
***Defendants***

**THE GREATER PROVIDENCE CHAMBER OF COMMERCE**
***Intervenor***

**DEFENDANTS' TRIAL BRIEF**

Submitted By:

Raymond A. Marcaccio, Esquire (#3569)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: November 22, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

I. THE BOARD'S ADVISORY OPINIONS. ..... 2

II. THE BOARD'S ENFORCEMENT OF THE ACT. ..... 4

LEGAL ARGUMENT ..... 5

I. WHETHER THE PROHIBITIONS ON CORPORATE CONTRIBUTIONS WITH RESPECT TO BALLOT QUESTIONS VIOLATE THE FIRST AMENDMENT IS A QUESTION OF LAW FOR THE COURT ..... 5

II. WHETHER THE LIMITATIONS ON CONTRIBUTIONS WITH RESPECT TO BALLOT QUESTIONS VIOLATE THE FIRST AMENDMENT IS A QUESTION OF LAW FOR THE COURT ..... 6

III. SECTION 17-25-10 (b) AS CONSTRUED, APPLIED AND ENFORCE BY THE BOARD IS CONSTITUTIONAL. ..... 6

A. This Court Must Construe a Statute to Avoid a Finding of Unconstitutionality. ..... 6

B. The Plain Language of the Statute and the Term "Acting in Concert" is Applicable to the RIACLU Under Certain Limited Circumstances. ..... 7

C. The Narrowing Construction of the Statute as Enforced by the Board Supports a Determination of Constitutionality. ..... 11

1. The Board Has the Authority to Enforce and Interpret the Act to Conform to Constitutional Mandates. ..... 11

2. The Board has Enforced the Statute as Applicable Only to the Solicitation of Contributions and Not to Any Other First Amendment Speech. ..... 13

D. The Statute as Applied and Enforced is Not Unconstitutionally Vague. ..... 16

IV. THE PAC ORGANIZATION, REPORTING AND DISCLOSURE REQUIREMENTS OF THE ACT DO NOT VIOLATE THE FIRST AMENDMENT. ..... 17

A. The PAC Requirements Are Supported by a Compelling State Interest Which Does Not Unconstitutionally Abridge the Right of Association. ..... 18

B. The Reporting and Disclosure Requirements Are Supported by a Compelling State Interest Which Does Not Unconstitutionally Abridge First Amendment Rights. ..... 22

C. The Reporting and Disclosure Requirements Are Not Facially Invalid as They Do Not Unconstitutionally Burden First Amendment Rights. .......... 23

D. The Reporting and Disclosure Requirements Are Not Unconstitutional as Applied to the RIACLU. .......... 25

V. THE BOARD DOES NOT OPPOSE COURT INTERVENTION .......... 26

CONCLUSION .......... 27

## TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union of New Jersey v. New Jersey Election Law Enforcement Commission,* 509 F.Supp. 1123 (D.N.J. 1981) ........ 14, 16

*Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. (1983) ........ 18

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 78, 117 S.Ct. 1055 (1997) ........ 6

*Asadoorian v. Warwick School Committee,* 691 A. 2d 573 (R.I. 1997) ........ 13

*Ayers-Schaffner v. DiStefano*, 37 F. 3d 726 (1st Cir. 1994) ........ 11

*Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) ........ 16

*Becker v. Federal Election Commission*, 230 F.3d 381 (1st Cir. 2000) ........ 14

*Board of Canvassers and Registration of City of Woonsocket v. Board of Elections of State*, 82 R.I. 358 107 A.2d 651 (1954) ........ 11

*Brasslett v. Cota*, 761 F.2d 827 (1st Cir. 1985) ........ 16

*Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ........ 6

*Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 103 S.Ct. 416 (1982) ........ 24

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636 (1999) 24

*Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ........ 18, 20

*Bullock v. Carter*, 405 U.S. 134, 92 S. Ct. 849 (1972) ........ 11

*Burdick v. Takushi*, 504 U.S. 526, 112 S. Ct. 2059 (1992) ........ 11

*California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402 (2000) ........ 18

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003) ........ 23, 24

*Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 102 S.Ct. 434 (1981) ........ 6, 20

*Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541 (R.I. 1989) ........ 7, 12, 13

*DeLuca v. Rhode Island State Board of Elections,* 118 R.I. 932, 374 A.2d 560 (1977) ........ 12

*Donovan v. City of Haverhill*, 311 F.3d 74 (1st Cir. 2002) ........ 6

*Dupres v. City of Newport*, 978 F.Supp. 429 (D.R.I. 1997) ........ 18

*Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115 (1st Cir. 1981) .................................. 6

*Federal Election Commission v. Akins*, 524 U.S. 11, 118 S.Ct. 1777 (1998) ............................. 17

*Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616 (1986) .......................................................................................... 19, 25

*First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407 (1978). ...................... 5, 20

*Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)...... 13, 16

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1981) ................................................................................................ 13

*In re. Advisory Opinion to the Governor*, 856 A.2d 320 (2004) ..................................................2

*Iowans for Tax Relief v. Campaign Finance Disclosure Commission*, 331 N.W. 2d 862 (Ia. 1983) ........................................................................................................ 20

*Kass v. Retirement Board of Employees' Retirement System*, 567 A.2d 358 (R.I. 1989).............. 7

*Let's Help Florida v. McCrary*, 621 F. 2d 195 (5th Cir. 1980).................................................. 19

*Malinou v. Board of Elections,* 108 R.I. 20, 271 A. 2d 798 (1970)............................................ 11

*McConnell v. Federal Election Commission*, 540 U.S. 93, 124 S.Ct. 619 (2004) ...................... 18

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 115 S.Ct. 1511 (1995)......................... 24

*Missouri Republican Party v. Lamb*, 270 F. 3d 567 (8th Cir. 2001) .......................................... 20

*Montana Chamber of Commerce v. Argenbright*, 28 F.Supp. 2d 593 (D. Mt. 1998).................. 22

*Mosby v. Devine*, 851 A.2d 1031 (R.I. 2004) ............................................................................. 7

*Mottola v. Cirello*, 789 A.2d 421 (R.I. 2002) .............................................................................. 8

*National Pharmacies, Inc. v. Felicianode-Melecio*, 221 F.3d 235 (1st Cir. 2000)........................ 6

*National Revenue Corporation v. Violet*, 807 F.2d 285 (1st Cir. 1986) ....................................... 5

*Nixon v. Shrink Missouri Gov. PAC*, 528 U.S. 377, 120 S.Ct. 897 (2000)................................. 20

*Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ....................................... 17

*Parkway Towers Associates v. Godfrey*, 688 A.2d 1289 (R.I. 1997).......................................... 13

*Pawtucket Power Associates Limited Partnership, et al. v. City of Pawtucket*, 622 A.2d 452 (R.I. 1993) ................................................................................................................. 13

*Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270 (R.I. 2004)........ 8

*Rhode Island Association of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999)........ 7

*Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)........ 16

*Roch v. Garrahy*, 419 A.2d 827 (R.I. 1980)........ 12

*Seide v. State*, 875 A.2d 1259 (R.I. 2005)........ 7

*State ex rel. Town of Westerly v. Bradley*, 877 A.2d 601 (R.I. 2005)........ 13

*Talley v. California*, 362 U.S. 60, 80 S.Ct. 536 (1960)........ 24

*Tanner v. Town Council of Town of East Greenwich,* 880 A.2d 784 (R.I. 2005)........ 8

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364 (1997)........ 11

*Torres-Torres v. Commonwealth*, 353 F.3d 79 (2003)........ 18

*United States v. Linick*, 195 F.3d 538 (9th Cir. 1999)........ 17

*VECO International, Inc. v. Alaska Public Offices Commission*, 753 P.2d 703 (Ak. 1988)........ 19

*Volle v. Webster*, 69 F.Supp. 2d 171 (D. Me. 1999)........ 22

*Vote Choice, Inc. v. DiStefano*, 4 F.3d 26 (1st Cir. 1993)........ 7

*Vote Choice, Inc. v. DiStefano*, 814 F.Supp. 195-198-199 (D.R.I. 1993)........ 14

*Whiting v. Town of Westerly*, 942 F.2d 18 (1st Cir. 1991)........ 13, 16, 17

*Yes for Life Political Action Committee v. Webster*, 74 F.Supp.2d 37 (D. Me. 1999)........ 24

**Statutes**

R.I. Gen. Laws § 17-7-5........ 11, 12

R.I. Gen. Laws § 17-25-1........ 1, 11

R.I. Gen. Laws § 17-25-3........ 10, 8

R.I. Gen. Laws § 17-25-5........ 12

R.I. Gen. Laws § 17-25-10........ 1, 9, 10

R.I. Gen. Laws § 17-25-10.1........ 6, 8

R.I. Gen. Laws § 17-25-23........ 10, 16

**R.I. Gen. Laws § 17-25.1-1** .......... **4, 9**

## INTRODUCTION

The Plaintiff, Rhode Island Affiliate American Civil Liberties Union, Inc. ("RI ACLU") challenges the legality of certain provisions of the Rhode Island Campaign Contributions and Expenditures Reporting Act, R.I. Gen. Laws § 17-25-1 *et seq.* (the "Act") that relate to corporate contributions, political action committees and ballot question advocacy. RI ACLU contends that the "acting in concert" provision of § 17-25-10 (b), both written and enforced, violates its First Amendment rights. To the contrary, the Board's enforcement of the Act is both reasonable and narrow enough in scope to avoid the constitutional pitfalls described by the Plaintiff. Moreover, these reporting and disclosure provisions of the Act serve a compelling state interest to protect the integrity of the state's political process and by informing the electorate of the identity of persons making contributions and expenditures towards ballot measures. Thus, this case is not one involving the prohibition of speech or association, but rather reporting and disclosure of contributions that minimally impinge on speech. While the former seldom survives judicial scrutiny, the latter routinely forms the basis for many governmental actions. The United States Supreme Court, as well as federal and state courts, have consistently reaffirmed a state's compelling interest in reporting and disclosure of contributions with respect to ballot question advocacy.

## STATEMENT OF FACTS

As previously stipulated, the Board accepts the Statement of Facts submitted by the RIACLU in support of its Trial Memorandum. However, the Board disputes that portion of statement number 14 regarding other persons whose contributions might be chilled by disclosure of their names through political action committee "(PAC") filings, as conclusory and not supported by any objective evidence. The Board also objects to statement number 12 on the

grounds that the "impossibility" cited therein is not a statement of fact but a conclusory statement on the ultimate issue of administrative burden which must be resolved by this Court.[1]

Additional facts which the Board deems relevant are set forth below.

## I. THE BOARD'S ADVISORY OPINIONS.

The language of the statute that governs the issues in this lawsuit states, in pertinent part:

> **17-25-10. Lawful methods of contributing to support of candidates – Reporting – Disposition of anonymous contributions.** – (a) No contribution shall be made or received, and no expenditures shall be directly made or incurred, to support or defeat a candidate or to advocate the approval or rejection of any question in any election except through:
> (1) The duly appointed campaign treasurer, or deputy campaign treasurers, of the candidates:
> (2) The duly appointed campaign treasurer or deputy campaign treasurers of a political party committee;
> (3) The duly appointed campaign treasurer or deputy campaign treasurer of a political action committee.
> (b) It shall be lawful for any person, not otherwise prohibited by law and not acting in concert with any other person or group, to expend personally from that person's own funds a sum which is not to be repaid to him or her for any purposes not prohibited by law to support or defeat a candidate or to advocate the approval or rejection of any question; provided, that any person making the expenditures and expenses, if the total of the money so expended exceeds one hundred dollars ($100) within a calendar year, to the board of elections within seven (7) days of making the expenditure and to the campaign treasurer of the candidate or political party committee on whose behalf the expenditure or contribution was made, or to his or her deputy, within seven (7) days of making the expenditure, who shall cause the expenditures and expenses to be included in his or her reports to the board of elections. Whether a person is "acting in concert with any other person or group" for the purposes of this subsection shall be determined by application of the standards set froth in § 17-25-23.
> (c) Any anonymous contribution received by a campaign treasurer or deputy campaign treasurer shall not be used or expended, but shall be returned to the donor, if the donor's identity can be ascertained; if not, the contribution shall escheat to the state.

In March 1995, the Greater Providence Chamber of Commerce (the "Chamber") asked the Board whether the Chamber must comply with the reporting obligations under the Act if it were to take

[1] The Board also objects to the admissibility of RIACLU's answer to Interrogatory Number 11 on the same basis.

a position regarding a ballot question and sought financial support from its members to fund the advocacy of that position. In Advisory Opinion 95-01 ("AO-95-01") the Board advised that "if the Chamber seeks financial support from its members with mailings or personal contact *requesting the funds* for the purpose of advocating or rejecting the Chamber's position regarding a ballot question then it would be deemed to be acting in concert with another person." Exhibit 44.[2] (emphasis provided) AO 95-01 further advised that the Chamber would have the option of creating a PAC which could expend funds for advocating the approval or rejection of a ballot question if it desired to solicit contributions from its members for that purpose. Thus, the Chamber, or any other entity, would not be prohibited from soliciting funds from its members to advocate a position on a ballot question, but rather would be deemed a PAC under the Act and be subject to the Act's reporting requirements.

In 1996, the Board issued Advisory Opinion 96-01 ("AO 96-01"), which exempted pre-existing entities formed for purposes other than ballot question advocacy from the "acting in concert" language of the statute when soliciting contributions from its members. Soliciting contributions from outside the Chamber's membership would fall within the "acting in concert" provisions of the Act.

The unintended result of AO-96-01 was that corporate entities, such as RIte Track, that were formed for political advocacy, listed on their corporate filings a more general and broad purpose in order to fit within the exemption created by AO-96-01.[3] Thus, the exemption swallowed the rule, and a greater number of entities regarded themselves shielded from the reporting and disclosure requirements of the Act. *See* Exhibit 14 (RIte Track); Exhibit 25 (Complete Quonset Coalition). Although some of these entities voluntarily disclosed their contributors, they did not feel compelled to do so.

---

[2] The exhibits numbers referred to herein are those submitted by RIACLU. Additional exhibits submitted by the Board have been designated as B1 *et seq.*

[3] For example, RIte Track listed its corporate purpose as "CONSTITUTED FOR THE PURPOSE OF PROMOTING A BETTER ECONOMIC ENVIRONMENT IN RHODE ISLAND THROUGH THE DEVELOPMENT OF BETTER METHODS OF TRANSPORTATION." Exhibit B1.

The Board determined that AO-96-01 was inconsistent with the policies and purposes of the Act and should be withdrawn. Exhibit 40. Effective January 2005, the Board withdrew AO 96-01. Consequently, pre-existing entities would be required to form a PAC and comply with reporting and disclosure requirements whenever they *expressly solicited contributions*, whether from inside or outside of their membership, for the specific purpose of ballot question advocacy.

## II. THE BOARD'S ENFORCEMENT OF THE ACT.

Prior to the withdrawal of the 1996 Advisory Opinion, the Board received a recommendation from counsel which clarified the intended scope of the 1995 Advisory Opinion:

> The Board should subject corporations, associations, or other entities receiving funds from multiple sources, to be expended for the purpose of advocating the passage or defeat of a ballot question, to the disclosure and reporting requirements of the Act and R.I. Gen. Laws § 17-25.1-1 *et seq.*

Exhibit 40. There was no implication that the enforcement of the statute would extend to any activities apart from the solicitation of contributions for the specific purpose of ballot question advocacy. Correspondence sent by the Board to various entities requiring compliance with the statutory reporting requirements have not sought to extend the term "acting in concert" to any activity apart from the solicitation and acceptance of contributions. *See* Exhibit 16 (citing to definition of "political action committee" as a group of two or more persons accepting contributions to be used for ballot question advocacy). Thus, despite the broad language of A0 95-01, the actual enforcement by the Board has been limited to solicitation, accepting and pooling of funds. The Board has not sought, and does not seek, to police mere coordinated speech.

The exhibits referenced by RIACLU do not broaden the application of the "acting in concert" language, but are examples of correspondence sent by the Board when AO 96-01 was in effect. By way of example, because there was no indication that Preserve Rhode Island, (Exhibit 18), West Broadway Neighborhood Association (Exhibit 19), or Working Rhode Island, (Exhibit 20) were formed expressly for the purpose of ballot question advocacy or soliciting funds from

outside its membership specifically for ballot question advocacy, their expenditures were deemed independently made from their own funds and not subject to the additional PAC reporting and contribution disclosure requirements of the Act.[4]

The "acting in concert" language in R.I. Gen. Laws § 17-25-10 (b) has never been applied by the Board to apply to mere coordination, consultation or collaboration. The PAC reporting and contribution disclosure requirements are only triggered when funds have been contributed from more than one person for the specific purpose of ballot question advocacy. Furthermore, the Board has began the process of promulgating rules and regulations in accordance with the recommendations set forth in memorandum from its counsel and in accordance with its enforcement history. Exhibit B2. These proposed regulations clarify that the reach of the statute does not impermissibly infringe upon First Amendment rights.

## LEGAL ARGUMENT

### I. WHETHER THE PROHIBITIONS ON CORPORATE CONTRIBUTIONS WITH RESPECT TO BALLOT QUESTIONS VIOLATE THE FIRST AMENDMENT IS A QUESTION OF LAW FOR THE COURT.

The Board acknowledges that there exists case law that supports the conclusion that prohibitions on corporate contributions set forth in the Act with respect to ballot questions are unconstitutional. *First National Bank v. Bellotti*, 435 U.S. 765 (1978).

The role of the Board of Elections is to enforce the statute as written by the General Assembly; it does not possess the authority to declare a statute unconstitutional.[5] *See National Revenue Corporation v. Violet*, 807 F.2d 285, 288 (1st Cir. 1986) ("For an attorney general to stipulate that an act of the legislature is unconstitutional is a clear confusion of the three branches of government; it is the judicial branch, not the executive, that may reject legislation." ) The Board has determined that it is not appropriate to defend the constitutionality of R.I. Gen. Laws §

---

[4] However, PAC reporting would be required under reinstated AO 95-01 if funds were solicited and accepted for the specific purpose of ballot question advocacy.

[5] For this reason, the Board was constrained to deny the allegations in the RIACLU's Complaint that the corporation contribution prohibition and contribution limitations with respect to ballot questions were unconstitutional.

17-25-10.1(h) and (j). Accordingly, the Board defers to the rulings of the judiciary with respect to the constitutionality of these statutory provisions.

## II. WHETHER THE LIMITATIONS ON CONTRIBUTIONS WITH RESPECT TO BALLOT QUESTIONS VIOLATE THE FIRST AMENDMENT IS A QUESTION OF LAW FOR THE COURT.

Once again, the Board acknowledges that there exists case law that tends to support the conclusion that the limitations on contributions with respect to ballot questions are unconstitutional. *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981).

As set forth above, the Board must defer to the rulings of the judiciary with respect to the constitutionality of R.I. Gen. Laws § 17-25-10.1(a).

## III. SECTION 17-25-10 (b) AS CONSTRUED, APPLIED AND ENFORCE BY THE BOARD IS CONSTITUTIONAL.

### A. This Court Must Construe a Statute to Avoid a Finding of Unconstitutionality.

Federal courts are instructed to render interpretations of state law by using the same methods as the state court, including the principle that statutes should ordinarily be given a constitutional interpretation where fairly possible. *National Pharmacies, Inc. v. Felicianode-Melecio*, 221 F.3d 235, 242(1st Cir. 2000) (citing to *Arizonans for Official English v. Arizona*, 520 U.S. 43, 78, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). As the First Circuit has often stated, "[w]here a standard is not so vague that reasonably intelligent people 'must necessarily guess at its meaning,' we must presume that state courts will give it a limiting construction that will preserve its facial constitutionality." *Donovan v. City of Haverhill*, 311 F.3d 74, 78 (1st Cir. 2002) (citing to *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1123 (1st Cir. 1981) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). "It is, moreover, axiomatic that, when a state legislature has sounded an uncertain trumpet, a federal court charged with interpreting the statute ought, if possible, choose a reading that will harmonize the statute with constitutional understandings and overriding federal law." *Vote*

*Choice, Inc. v. DiStefano*, 4 F.3d 26, 41 (1st Cir. 1993) (refusing to read Rhode Island's provision of in-kind benefits under the election laws in the overbold fashion argued by the plaintiff.)

In this regard, the Rhode Island Supreme Court has held that "when passing upon the constitutionality of enactments of the General Assembly, in light of the "broad plenary power of the General Assembly, this [C]ourt's evaluation of legislative enactments has been extremely deferential; * * * we have interfered with such enactments only when the legislation at issue could palpably and unmistakably be characterized as an excess of legislative power." *Mosby v. Devine*, 851 A.2d 1031, 1045 (R.I. 2004) (citations omitted). "Our task is to evaluate the constitutional issues presented and "if two alternate interpretations are possible, we shall favor that which presents no potential constitutional difficulties." *Id.* (citing *Kass v. Retirement Board of Employees' Retirement System*, 567 A.2d 358, 360 (R.I. 1989)) "We begin with the well established principle that a statute is presumed to be valid and constitutional, and the party challenging its constitutionality bears the burden of convincing this Court beyond a reasonable doubt that the enactment violates the state or federal constitution. *Id.* (citations omitted).

Even where state officials fail to offer an authoritative interpretation of a state statute, a federal court considering a pre-enforcement challenge may presume a narrowing construction to which the law is fairly susceptible in order to avoid constitutional issues. *Rhode Island Association of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 36 (1st Cir. 1999).

### B. The Plain Language of the Statute and the Term "Acting in Concert" is Applicable to the RIACLU Under Certain Limited Circumstances.

When construing a state statute, a court must presume that the Legislature intended every word, sentence or provision of the enactment to have a useful purpose and to have some force and effect. *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I. 1989). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Seide v. State*, 875 A.2d 1259, 1266 (R.I. 2005). "When the

statute is susceptible to more than one reasonable interpretation, however, this [state] court will endeavor by every rule of statutory construction to ascertain the intent of the General Assembly." *Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 279 (R.I. 2004). Moreover, a statute must be construed in its entirety, with reference to all of its related provisions. *Tanner v. Town Council of Town of East Greenwich,* 880 A.2d 784, 796 (R.I. 2005) ("When confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will 'glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed.' ") (citing to *Mottola v. Cirello*, 789 A.2d 421, 423 (R.I. 2002)).

A review of the statutory language, in light of these well established principles of statutory construction, makes it clear that § 17-25-10.1 of the Act is applicable to the RIACLU and requires that the RIACLU form a political action committee when it *wants to separately solicit funds for the purpose of ballot question advocacy.*

Pursuant to R.I. Gen. Laws § 17-25-10 (b) and § 17-25-3 (8), a corporation is a "person" that may "expend personally from [its] ***own funds***" to advocate the approval or rejection of any ballot question, provided that all expenses and expenditures by said corporation in excess of one hundred dollars ($100.00) be reported to the Board.[6] (Emphasis added.) This provision expressly permits independent expenditures by a corporation, acting by itself and utilizing its own general treasury funds, to advocate for or against a ballot question.[7] Thus, a corporation is not required to establish a segregated fund or PAC in order to advocate independently for or against a ballot question, *but may use its own existing funds for this purpose*. A corporation

[6] R.I.Gen. Laws § 17-25-13 (8) defines "person" as "an individual, partnership, committee, association, corporation, and any other organization." For ease of argument only, the Board has referred to the corporate entity, recognizing that all of the listed entities fall within the parameters of the statute.

[7] Whether a corporation should be permitted to make contributions to a PAC for the purpose of ballot question advocacy will be determined by this Court in the present action.

expending its own funds independently to advocate in support of or in opposition to a ballot question must report all such expenditures and expenses to the Board in accordance with both § 17-25-10 (b) and § 17-25.1-1 *et seq.*, if a gambling question is at issue, on a schedule of independent expenditures.

A corporation, or membership association, does not use its ***own existing funds*** for ballot question advocacy when it specifically solicits its members for the purpose of ballot question advocacy. This request for additional funding for the purpose of ballot question advocacy constitutes "acting in concert." [8] RIACLU urges that because the definition of "person" includes organizations such as committees and associations which inherently engage in collaborative efforts, the term "own funds" means funds obtained from members of those organizations. However, this interpretation evades the clear intent of the statute to disclose the identity of contributors to the public. For example, a corporation could contribute large sums to an association, such as the Chamber of Commerce, to defeat a ballot question, such as the casino referendum. Clearly, this influx of funds to the Chamber would not be mere membership dues, but would be a contribution earmarked for the specific purpose of ballot question advocacy. Moreover, those funds would not constitute the Chamber's own existing funds accumulated through ordinary membership dues, but would be additional funds accepted for this specific purpose. In this scenario, the public has the right to know that the advocacy regarding the casino referendum was not being conducted by the Chamber as a general matter, but was being supported by a large contribution from one of its members whose identity should be reported and disclosed.

Thus, when a corporation elects to "act in concert with any other person or group," including in certain circumstances its own members, its expenditures are no longer considered independent expenditures, but consist of contributions for the specific purpose of advocating a

[8] While it may be true that a corporation may request capital or equity contributions in order to circumvent the statute, the fact that the statute can be circumvented does not affect its intended scope.

ballot question. This necessarily results in a PAC as that term is defined under the governing statute. Under the statute, a PAC is defined as follows:

> "Political action committee" means any group of two (2) or more persons which accepts any contributions to be used for advocating the election or defeat of any candidate or candidates or ***to be used for advocating the approval or rejection of any question or questions submitted to the voters***.

R.I. Gen. Laws § 17-25-3 (9). (Emphasis provided.)

Section 17-25-10 (b) defines "acting in concert with any other person or group" by incorporating the standards set forth in § 17-25-23. Based on the policy objectives of the Act, it must be concluded that this standard was utilized simply to distinguish an independent expenditure from a "coordinated expenditure." As RIACLU has argued, many of the express terms of § 17-25-23 cannot be literally applied to ballot questions. While that is true, the General Assembly is permitted to refer to § 17-25-23 for instructional purposes.

R.I. Gen. Laws § 17-25-10 (b) authorizes independent expenditures only, and the "acting in concert" language distinguishes between an independent expenditure and a contribution of funds in combination with another person or entity. In other words, while the statute does not and cannot require a corporation acting independently to establish a PAC, if a corporation or other entity chooses to solicit contributions from its members designated for ballot advocacy, or the corporation chooses to combine its efforts with another corporation, person or entity, it is no longer expending its own funds independently, but is "acting in concert with any other person or group" and becomes subject to the PAC reporting requirements and must disclose both contributions and expenditures.

Under the Board's current enforcement mechanism, a segregated fund, an association, corporation or any other entity will be considered a PAC when the two statutory requirements are met: (1) two or more persons contribute funds; (2) to be used expressly for advocating the approval or rejection of a ballot question. As a PAC, the corporation, entity or fund would be

required to comply with the reporting and disclosure requirements of R.I. Gen. Laws § 17-25-1 *et seq*. with respect to contributions and expenditures.

### C. The Narrowing Construction of the Statute as Enforced by the Board Supports a Determination of Constitutionality.

#### 1. The Board Has the Authority to Enforce and Interpret the Act to Conform to Constitutional Mandates.

The Act was promulgated by the Rhode Island General Assembly to regulate state election procedures. Although elections implicate free speech and other First Amendment considerations, state election laws routinely withstand constitutional scrutiny.

"A State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter*, 405 U.S. 134, 145, 92 S. Ct. 849, 857 (1972). "The states' authority to regulate elections comes from a recognition, embodied in the Constitution, that elections must be structured carefully to ensure that they are fair and honest, so 'some sort of order, rather than chaos, is to accompany the democratic processes'." *Ayers-Schaffner v. DiStefano*, 37 F. 3d 726, 729 (1st Cir. 1994) (citing to *Burdick v. Takushi*, 504 U.S. 526, 112 S. Ct. 2059, 2063 (1992)). While the First Amendment is implicated in the election process, "the States may, and inevitably must, enact reasonable regulations of parties, elections and ballots to reduce election and campaign related disorder" and such reasonable regulations are not violative First Amendment concerns." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364 (1997).

The Rhode Island Constitution vests in the General Assembly the exclusive jurisdiction over the time, manner and place of conducting elections "for the prevention of abuse, corruption and fraud in voting." R.I. Const. Art. 2 § 2; *Malinou v. Board of Elections,* 108 R.I. 20, 26, 271 A. 2d 798, 801 (1970). The General Assembly in turn has vested the authority over the manner of conducting elections and ensuring the integrity of the election process with the Board. R.I. Gen. Laws § 17-7-5. *Board of Canvassers and Registration of City of Woonsocket v. Board of*

*Elections of State*, 82 R.I. 358, 107 A.2d 651 (1954): (explaining the legislative intent in creating the Board "to vest in that Board statewide supervision of elections.") The Court also must presume that the grant by statute of a certain amount of autonomy to this regulatory agency was intended by the Legislature and considered in the public's best interest. *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d at 543.

Pursuant to statute, the Board is delegated the express authority to: "(a)(1) Exercise general supervision of the administration of the election law by local boards." R.I. Gen. Laws § 17-7-5. The statute also expressly provides:

> (c) The state board has power to make the rules, regulations and directives that it deems necessary to carry out the objects and purposes of this title not inconsistent with law.
>
> (d) The state board also has jurisdiction over all election matters on appeal from any local board and over any other matters pertinent and necessary to the proper supervision of the election laws.

The Board is specifically empowered to perform the duties that are necessary to implement the provisions of the state campaign contribution and expenditure reporting laws. R.I. Gen. Laws § 17-25-5(a). The statute also expressly permits the Board to conduct investigations or hearings relative to alleged violations of said laws either on its own initiative or upon receipt of a verified written complaint. R.I. Gen. Laws § 17-25-5(a)(7).

Thus, the Board has jurisdiction over all matters pertinent and necessary to the proper supervision of the election laws. *DeLuca v. Rhode Island State Board of Elections,* 118 R.I. 932, 374 A.2d 560 (1977). The Board has also been acknowledged as the "agency that serves as the guardian of the franchise" which has the task to ensure "that all of the laws of this state in respect to elections are faithfully and properly obeyed with regard to the rights of the electors and political candidates." *Roch v. Garrahy*, 419 A.2d 827 (R.I. 1980).

Based on the forgoing, this Court must give due deference to the narrowing interpretation of the challenged statutory provisions which have been applied and enforced by the Board.

### 2. The Board has Enforced the Statute as Applicable Only to the Solicitation of Contributions and Not to Any Other First Amendment Speech.

The Board is the agency statutorily empowered to interpret and enforce the election laws. Its determination as to the applicability of the PAC reporting and disclosure provisions are entitled to considerable judicial deference. *See Pawtucket Power Associates Limited Partnership, et al. v. City of Pawtucket*, 622 A.2d 452, 456 (R.I. 1993) (affirming doctrine that deference is accorded to an administrative agency when it interprets a statute the administration and enforcement of which has been entrusted to the agency.) Deference is accorded even when the agency interpretation is not the only permissible interpretation that could be applied. *Id.* In addition, when a statute is silent or unclear on the question presented the administrative determination is entitled to heightened deference. *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I. 1989) (recognizing general presumption the grant by statute of a certain amount of autonomy to a regulatory agency was intended by the Legislature and considered to be in the public's best interest.) These maxims govern as long as the construction of the statutes by the agency is not clearly erroneous or unauthorized and is consistent with the overall purposes of the legislation. *Asadoorian v. Warwick School Committee,* 691 A. 2d 573, 577 (R.I. 1997); *Parkway Towers Associates v. Godfrey*, 688 A.2d 1289, 1293 (R.I. 1997).

Moreover, when confronted with a challenge to the constitutionality of a legislative enactment, a federal court must consider any limiting construction that a state court or enforcement agency has proffered. *Whiting v. Town of Westerly*, 942 F.2d 18, 21 (1st Cir. 1991) (citing *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1981) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972)). *See also, State ex rel. Town of Westerly v. Bradley*, 877 A.2d 601, 606 (R.I. 2005).

Deference to agency interpretation has routinely been applied in construing both federal and state election laws. *See Becker v. Federal Election Commission*, 230 F.3d 381 (1st Cir.

2000) (deferring to Federal Election Commission's debate regulations defining statutory terms "contribution" and "expenditure" as permissibly narrowing the statute to protect first amendment interests); *American Civil Liberties Union of New Jersey v. New Jersey Election Law Enforcement Commission,* 509 F.Supp. 1123, 1132-1133 (D.N.J. 1981). In fact, this Court has accorded great weight to the Board's historical enforcement of election laws to avoid any alleged constitutional infirmities of the Act. *Vote Choice, Inc. v. DiStefano*, 814 F.Supp. 195-198-199 (D.R.I. 1993) (dismissing claims that statute required corporation to form PAC prior to making independent expenditures for ballot question advocacy.)

The Board has demonstrated a constitutionally viable limiting construction of the "acting in concert" language as applied to ballot question advocacy as applicable to solicitation of funds for the specific purpose of ballot question advocacy. Under the Board's consistent interpretation, conversation or collaboration without the coordination of funds from two or more persons does not require the formation of a PAC or the reporting of contributions.

Thus, the Board's enforcement would not curtail RIACLU's independent expenditures to support a ballot question, nor would it curtail its ability to contribute to a PAC. The Board would likewise not restrict RIACLU's ability to collaborate on such issues as the Constitutional Convention referendum, provided that there is no commingling of funds or joint solicitation of contributions. However, if RIACLU *did intend to solicit contributions from its members or outside of its membership for the specific purpose of ballot question advocacy, it would be required to establish a PAC and comply with reporting requirements*. *See* RIACLU Memorandum, p. 8-9 (indicating the RIACLU "also wishes to solicit contributions from corporations to support its own efforts and to support the efforts of like-minded community groups on ballot questions raising issues of mutual interest.") Nevertheless, based upon RIACLU's Answers to Interrogatories, numbers 5 and 9, its present activities would not fall within the PAC organizational and reporting requirements. Exhibit 62.

In its Supplemental Answers to Interrogatories, Exhibit 63, RIACLU outlines the efforts of the Rhode Island Family Life Center to organize to support a ballot question to restore the

right to vote of felons upon their release from incarceration. Under the Board's interpretation of the Act, RIACLU can consult and coordinate with this coalition and independently contribute existing RIACLU funds to the coalition so long as the coalition itself registers as a PAC and complies with reporting and disclosure requirements under the Act and RIACLU does not separately solicit funds for this purpose. In other words, the Rhode Island Family Life Center, to the extent it is soliciting funds from various persons and entities for the purpose of ballot question advocacy must form a PAC and comply with the registration and reporting requirements of the Act, and must do so before it accepts RIACLU's contribution. The National Right to Vote Coalition would then contribute its funds to this PAC.[9]

In contrast, RIACLU's contribution to Citizens for Representative Government, made for the purpose of opposing the constitutional convention referendum, did not require RIACLU to form a PAC because RIACLU did not separately solicit members or non members for this purpose. Exhibit 62, Answer to Interrogatory No. 5. Instead, the contribution to Citizens for Representative Government was reported as a contribution by Citizens for Representative Government. Exhibit 27[10] Similarly, because the newsletters and dinner booklets published by RIACLU do not solicit funds for the primary purpose of ballot question advocacy, and RIACLU only receives other funding indirectly from the national ACLU organization, the formation of a PAC, as a general matter, is not required. Exhibit 62, Answer to Interrogatory No. 9. RIACLU may continue to utilize its own funds, collected as general contributions, for the purpose of ballot question advocacy, provided those independent expenditures are reported to the Board.

---

[9] Until the constitutionality of the PAC contribution limits is ruled upon by this Court, contributions to this PAC would be limited to $1000.00.

[10] Although Citizens for Representative Government described themselves as a "Non-PAC Coalition" a category not presently recognized by statute or by the Board, it nevertheless complied with the reporting and disclosure requirements of the Act, listing the contributions and expenditures for the purpose of the ballot question advocacy. A complaint was filed by Operation Clean Government requesting that the Board investigate this matter, and in particular whether Citizens for Representative Government should have registered as a PAC, Exhibit 61, which has not been prosecuted by the Board pending the resolution of the instant litigation.

### D. The Statute as Applied and Enforced is Not Unconstitutionally Vague.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 3255-56, 82 L.Ed.2d 462 (1984). Generally, laws must give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. at 108, 92 S.Ct. at 2298-99; see also *Whiting v. Town of Westerly*, 942 F.2d 18, 22 (1st Cir. 1991); *Brasslett v. Cota*, 761 F.2d 827, 838 (1st Cir. 1985). A vague law both "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" and leads "citizens to 'steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.' " *Grayned v. City of Rockford*, 408 U.S. at 108-09, 92 S.Ct. at 2299 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S.Ct. 1316, 1322-23, 12 L.Ed.2d 377 (1964)) (internal quotation marks omitted); *see also Whiting v. Town of Westerly*, 942 F.2d at 22.

As set forth above, the PAC reporting and contribution reporting requirements of the Act define the conduct it proscribes with the requisite specificity so as to pass constitutional muster. To the extent that the reference to § 17-25-23 created an ambiguity vis-à-vis ballot questions, the Board's interpretation and enforcement have effectively clarified the reach of the Act to within constitutional parameters as applicable only to the solicitation and acceptance of contributions for the express purpose of ballot advocacy. As such, the PAC reporting and disclosure requirements as applied and enforced by the Board, satisfy the strictures of the First and Fourteenth Amendments.

In this regard, the Board's narrowing construction, which is reasonable and not inconsistent with the statute, permits the statutory provisions to withstand constitutional scrutiny. *See American Civil Liberties Union of New Jersey v. New Jersey Election Law Enforcement Commission,* 509 F.Supp. 1123, 1132-1133 (D.N.J. 1981) (state election law was not unconstitutionally vague where agency regulation confined reporting requirements to a narrower

group of advocacy organizations); *United States v. Linick*, 195 F.3d 538 (9th Cir. 1999) (regulation, when read in light of agency's interpretive rule, was not unconstitutionally overbroad under the First Amendment).

Furthermore, the Board is in the process of promulgating regulations which codify its historical enforcement of the "acting in concert" language of the Act which countenance against a finding of unconstitutionality. Exhibit B2. Under similar circumstances, even the United States Supreme Court has refrained from addressing and ruling on the constitutionality of the scope of "political committee" under the Federal Election Campaign Act until the Federal Election Commission had the opportunity to promulgate regulations that could significantly affect the interpretative issues before the Court. *Federal Election Commission v. Akins*, 524 U.S. 11, 118 S.Ct. 1777 (1998).

Finally, for a facial challenge to succeed, the complainant must demonstrate that the law is impermissibly vague in all of its applications. From this requirement it follows that a plaintiff who engages in conduct that is clearly proscribed by the statute cannot complain that the statute is vague on its face nor challenge the vagueness of the law as applied to the conduct of others. *Whiting v. Town of Westerly*, 942 F.2d 18, 21 (1st Cir. 1991) (citing to *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191; *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974)). Under this standard, to the extent RIACLU plans to solicit from either within or outside of its membership for the primary purpose of ballot question advocacy, RIACLU falls within the parameters of the statute and its vagueness challenge must fail.

## IV. THE PAC ORGANIZATION, REPORTING AND DISCLOSURE REQUIREMENTS OF THE ACT DO NOT VIOLATE THE FIRST AMENDMENT.

The RIACLU has challenged both the PAC organization requirements and the reporting and disclosure requirements under the Act. Should this Court determine that the PAC requirements are unconstitutional, either on their face or as applied to RIACLU, the disclosure and reporting requirements of the Act can and should nevertheless be upheld. *Dupres v. City of*

*Newport*, 978 F.Supp. 429, 432 (D.R.I. 1997) (in the absence of evidence of legislative intent to the contrary, " '[t]he unconstitutionality of a part of an Act does not necessarily defeat ... the validity of its remaining provisions.'). *See also Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976).

### A. The PAC Requirements Are Supported by a Compelling State Interest Which Does Not Unconstitutionally Abridge the Right of Association.

RIACLU contends that the PAC organizational requirements unduly abridge First Amendment associational rights. The First Circuit has applied the balancing test as first promulgated in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564 (1983) in analyzing the burdens placed upon a person's right of association:

> When deciding whether a state election law violated First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on plaintiff's right must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, non discriminatory restrictions.

*Torres-Torres v. Commonwealth*, 353 F.3d 79, 82 (2003).

The Board acknowledges that the First Amendment protects "the freedom to join together in furtherance of common political beliefs." *California Democratic Party v. Jones*, 530 U.S. 567, 574, 120 S.Ct. 2402, 2408 (2000). However, the United States Supreme Court has also recently affirmed that PAC disclosure requirements compelling organizations to reveal their identities does not impermissibly infringe upon these First Amendment rights. *McConnell v. Federal Election Commission*, 540 U.S. 93, 196-197, 124 S.Ct. 619, 690-691 (2004) In *McConnell*, the Supreme Court cited approvingly to the findings of the District Court:

> The factual record demonstrates that the abuse of the present law not only permits corporations and labor unions to fund broadcast advertisements designed to influence federal elections, but permits them to do so while concealing their

> identities from the public. BCRA's disclosure provisions require these organizations to reveal their identities so that the public is able to identify the source of the funding behind broadcast advertisements influencing certain elections. . . . Curiously, Plaintiffs want to preserve the ability to run these advertisements while hiding behind dubious and misleading names like: 'The Coalition-Americans Working for Real Change' (funded by business organizations opposed to organized labor), 'Citizens for Better Medicare' (funded by the pharmaceutical industry), 'Republicans for Clean Air (funded by brothers Charles and Sam Wyly). Given these tactics, Plaintiffs never satisfactorily answer the question of how 'uninhibited, robust, and wide open' speech can occur when organizations hide themselves from the scrutiny of the voting public. Plaintiffs' argument for striking down BCRA's disclosure provisions does not reinforce the precious First Amendment values that Plaintiffs argue are trampled by BCRA, but ignores the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace.

*Id.* (citations to the record omitted). As demonstrated herein, this rationale is equally applicable under the Act: only through the filing of a political action committee notice of organization and subsequent reporting can Rhode Island citizens be fully informed of the persons contributing to support or defeat a ballot question.

Moreover, because the statute does not forbid individuals from acting in concert, the burden placed on the associational right by requiring registration and reporting is not severe and, accordingly, triggers a less exacting review. *Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616 (1986) (observing that the requirement that expenditures be made through PACs "is of course distinguishable from the complete foreclosure of any opportunity for political speech.")

PAC organization and reporting requirements have been upheld by other courts as supported by compelling state interests in disclosing information needed by the public and assisting enforcement of campaign finance laws. *See, e.g., Let's Help Florida v. McCrary*, 621 F. 2d 195 (5th Cir. 1980) (recognizing that statute requiring political committees to register with the state and to file reports about contributions and contributors does not impermissibly harm First Amendment rights); *VECO International, Inc. v. Alaska Public Offices Commission*, 753 P.2d 703 (Ak. 1988) (construing obligation to register as PAC under "acting jointly" language in statute as triggered only by contribution or expenditure activity); *Iowans for Tax Relief v.*

*Campaign Finance Disclosure Commission*, 331 N.W. 2d 862 (Ia. 1983) (upholding PAC organizational requirements for pre-existing groups that solicited and received contributions for a covered purpose under the statute.)

These compelling state interests do not have to be specifically supported by new studies or evidence independent of studies already generated by other legislative bodies, where there is objective evidence of facts acknowledged by other courts sufficient to render that statute valid. *Nixon v. Shrink Missouri Gov. PAC*, 528 U.S. 377, 120 S.Ct. 897, 906 (2000) ("[T]he quantum of empirical evidence needed to [show the existence of the evil sought to be remedied] will vary up and down with the novelty and plausibility of the justification raised."). *See also*, *Missouri Republican Party v. Lamb*, 270 F. 3d 567 (8th Cir. 2001) (finding that "any other rule would prove unworkable because, among other things, the minds of legislatures are largely unknowable, individual legislatures have various motives for voting the same way on the same bill, and legislative history is nonexistent in many states.").

Since the federal courts have consistently reiterated that the interests of informing the electorate of the source of support or opposition to an issue, and providing data for regulating campaign practices, are valid interests furthered by PAC organization and reporting requirements, no separate Rhode Island legislative history is necessary to support the compelling state interest furthered by the Act. *See First National Bank of Boston v. Bellotti*, 435 U.S. at 791-792, 98 S.Ct. at 727-728 ("Identification of the source of advertising may be required as means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected."); *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 102 S.Ct. 434 (1981) ("It is true that when individuals or corporations speak through committees, they often adopt seductive names that may tend to conceal the true identity of the source."); *Buckley v. Valeo*, 424 U.S. 1, 66-67, 96 S.Ct. 612 (1976) (finding that the existence of voter ignorance is a universally recognized feature of the political landscape.)

The documents produced in this case, which are representative samples of typical reports filed with the Board, clearly demonstrate the need for PAC reporting and disclosure. For

example, the name RIte Track gives the voter very little information regarding the persons supporting the ballot question, and whether those persons are individuals or corporations. In fact, until RIte Track voluntarily disclosed its contributors, the public had no way of knowing that the major supporter of the ballot question was the Providence & Worcester Railroad and other corporations who would substantially profit from its passage. Exhibits 13, 14. Moreover, it is unclear whether a group would voluntarily disclose its contributors if it would negatively impact the public perception of the speaker's message. The public should not be dependent upon voluntary disclosure to obtain access to this critical information. Other examples of voluntary disclosure of contributors does not alter this conclusion, but rather, reinforces it. *See* Exhibit 25 ("Complete Quonset Coalition" funded by Providence & Worcester Railroad and Greater Providence Chamber of Commerce, among others); Exhibit 26 ("Coalition for Progressive Economic Development funded by Amgen, Greater Providence Chamber of Commerce and CVS). Without the disclosure of the identity of these major contributors, the names of these "coalitions" provide little information to the voting public regarding who is actually supporting or opposing a ballot question.

A further example highlighting the need for PAC organizational requirements is the ongoing efforts by the Narragansett Indian Tribe to obtain a casino in Rhode Island. In 1994, the Narragansett Indian Tribe took the position that it was not subject to reporting under the elections laws. Exhibit B3. Although it voluntarily disclosed its expenditures, it did not report the contributions received from outside sources. It this regard, it is certainly reasonable to infer the the over $1 million in expenditures for advertising was not funded from the Narragansett Indian Tribes own funds. This inference was implicitly confirmed in more recent correspondence to the Board indicating that the Narragansett Indian Tribe and Harrah's wanted to form a corporation to "educate the public" about the ballot issue. Exhibit 38. This new corporation did not want to file as a PAC. This new corporation, whose primary purpose would be ballot question advocacy, could conceivably choose a name, such as "Rhode Islanders for More Opportunity," which would fail to disclose the identity and source of support for the casino

ballot question. In the absence of PAC reporting requirements under the Act, the public would be kept in the dark and remain ill informed.

Accordingly, the PAC organizational and reporting requirements under the Act are supported by compelling state interests which are sufficient to withstand a facial constitutional challenge. Moreover, whether or not RIACLU can establish that the PAC requirements are unconstitutional as applied to them, does not alter the constitutionality of the PAC requirements as a general matter. See *Volle v. Webster*, 69 F.Supp. 2d 171 (D. Me. 1999) (holding that requirement that issue advocates register as political action committees was not facially unconstitutional.)[11]

**B. The Reporting and Disclosure Requirements Are Supported by a Compelling State Interest Which Does Not Unconstitutionally Abridge First Amendment Rights.**

Rhode Island has a compelling interest in requiring the reporting of contributions and expenditures for ballot measure advocacy separate and apart from the PAC organizational requirements. The public has a legitimate interest in knowing the identity of persons contributing to another person, entity or fund for the support or defeat of a ballot question as well as how those funds are being expended by the entity or fund itself. Thus, the critical purpose is informational. The influx of money spent to advocate for or against a ballot question produces an onslaught of political communications through which voters must pick out meaningful and accurate messages. Given the complexity of many ballot questions, and the likely inability or unwillingness of the electorate to independently study the details of individual ballot measures, being able to evaluate who is doing the talking is of critical importance.

It has been observed:

---

[11] *Montana Chamber of Commerce v. Argenbright*, 28 F.Supp. 2d 593 (D. Mt. 1998), cited byRIACLU, is inapposite, as the court struck down a statute that required a corporation to form a PAC when making independent expenditures for the purpose of ballot question advocacy. Unlike the statute in *Argenbright*, the Rhode Island Act does not require the formation of a PAC when a corporation expends its corporate funds, it only requires the formation of a PAC when a corporation desires to act in concert with other persons or entities for the purpose of ballot question advocacy. *Compare Id.* at 600.

> Even more than candidate elections, initiative campaigns have become a money game, where average citizens are subjected to advertising blitzes of distortions and half-truths and are left to figure out for themselves which interest groups pose the greatest threats to their self-interest. Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown. At least by knowing who backs or opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the legislation.

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105-06 (9th Cir. 2003) (quoting from David S. Broder, Democracy Derailed: Initiative Campaigns and the Power of Money at 18 (2000)). By requiring disclosure of the source and amount of the funds spent for express ballot measure advocacy, Rhode Island voters are provided with a useful shorthand for evaluating the speaker behind the sound bite.

The Board can only further this objective by: (1) requiring all entities or persons advocating a position on a ballot question to report their independent expenditures; (2) by requiring all entities or persons who accept monies from more than one source for the purpose of advocating a position on a ballot question to report said contributions in accordance with the Act; and (3) by requiring all entities who solicit funds for the purpose of advocating a position on a ballot question to report said contributions in accordance with the Act.

The examples cited in the preceding section demonstrate why disclosure of contributors serves a compelling state interest in providing critical information to the public. Simply stated, mere voluntary disclosure of contributors is not enough. The very information revealed in these voluntary disclosures, *see* Exhibits 14, 25, 25, 27, underscores the reasons for compelled disclosure under the Act.

### C. The Reporting and Disclosure Requirements Are Not Facially Invalid as They Do Not Unconstitutionally Burden First Amendment Rights.

RIACLU contends that its members and supporters have a constitutionally protected right to anonymity and freedom from the disclosure of their identity. However, as evidenced by the

cases cited by RIACLU, this not a per se rule under the First Amendment but is only applied to limited circumstances.

First, anonymity is protected under the First Amendment against compelled disclosure on the face of the published material. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 115 S.Ct. 1511 (1995) (invalidating statute which prohibited distribution of anonymous campaign literature); *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536 (1960) (holding ordinance that required names and addresses on handbills unconstitutional.) Because the statutes in these cases regulated the content of communications themselves, beyond requiring the reporting of funds used, they abridged fundamental First Amendment rights.

This constitutionally determinative distinction between on-publication disclosure requirements and after-the-fact reporting requirements has been noted and relied upon both by the Supreme Court and other circuits. *See Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636 (1999) (distinguishing between identity badge requirement and filing of affidavit with secretary of state); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d at 1105-06 (explaining that reporting expenditures in public filings does not alter content of communication in violation of First Amendment). *See also Yes for Life Political Action Committee v. Webster*, 74 F.Supp.2d 37, 40-41 (D. Me. 1999) (explicating constitutional distinction between compelling interest in public filings and mandated contemporaneous disclosure on the message itself).

Second, anonymity is protected, and disclosure is not required, when a particular individual or group can demonstrate that it would suffer from a reasonable probability of threats, harassment or reprisals if their identity were to be disclosed. *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87, 103 S.Ct. 416 (1982).

Neither of these situations are present in this case. The provisions of the Act require disclosure and reporting in public filings, not on the face of the advertisements, leaflets or other communications and so do not impermissibly infringe upon First Amendment rights. Likewise, RIACLU has proffered no evidence that its members or supporters would suffer threats,

harassment or reprisals if their identities were disclosed in public filings. Accordingly, the public's right to information in the context of ballot question advocacy is a compelling state interest that withstands constitutional scrutiny under the First Amendment.

**D. The Reporting and Disclosure Requirements Are Not Unconstitutional as Applied to the RIACLU.**

RIACLU has made a blanket argument that the PAC reporting requirements are unconstitutional as applied to it because the administrative burdens of the Act impermissibly infringe upon its First Amendment rights. However, the fact that the organizational and record keeping requirement may be burdensome does not mean that disclosure and reporting of contributions and expenditures are also unconstitutionally burdensome.[12]

The Board does not concede that the factors enumerated in *Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616 (1986), require that the RIACLU be exempt from the PAC organizational requirements. To the contrary, it is not unreasonable or unduly burdensome for RIACLU to form a PAC when it desires to solicit contributions for the primary purpose of ballot question advocacy. Many other groups who wish to advocate the support or defeat of ballot questions, including local groups who clearly do not receive monetary support from a national affiliate, routinely comply with these reporting requirements. *See* Exhibit B4. RIACLU does not adequately explain why it would be so difficult to track contributions made in response to a specific ballot question solicitation. The Board submits that the PAC requirement, when interpreted as applicable in these limited circumstance, does not unduly impinge upon RIACLU's First Amendment rights.[13]

Moreover, RIACLU can be distinguished from *MCFL* in certain salient ways. Critical to the success of the as applied challenge in *MCFL*, was the fact that the group had a policy against

[12] Copies of the reporting schedule and the forms to be completed and filed by PAC are filed herewith as Exhibit B5.

[13] Contrary to RIACLU's position, the PAC registration and reporting requirements as enforced by the Board do not compel groups to pool their resources in order to collaborate politically, but requires them to form a PAC when they decide to do so and accept monetary contributions from more than one source.

accepting contributions from corporations and labor unions which "prevent[ed it] from serving as a conduit for the type of direct spending that creates a threat to the political marketplace." *Id* at 264, 107 S.Ct. at 631. RIACLU has admitted that it has no policy against accepting contributions from corporations and labor unions, has regularly accepted said contributions in the past and has corporate members Exhibit 62, numbers 7, 8 and 29

Furthermore, the administrative burdens imposed upon RIACLU are not nearly as substantial as RIACLU contends. As set forth in its bylaws, (Exhibit 4, p. 13) and in its Answers to Interrogatories, number 12 (Exhibit 62), RIACLU has a treasurer who is responsible to receive, record and deposit contributions from members and non members. It is not unreasonable for this individual to file the reports required by the Act. In addition, the list of duties set forth in RIACLU's Memorandum, pages 33-35, when condensed to its essence and excising duplicative items, consists of only six administrative obligations. The actual reporting forms, submitted herewith, are not cumbersome or burdensome. Exhibit B4.

Finally, the fact that a PAC that has registered for ballot question advocacy must terminate its business within thirty days after the election, assists RIACLU's cause. In this manner, once a ballot question has been decided, it no longer must maintain its association with other entities that may not share common views on every political issue. RIACLU may continue to advocate regarding a particular political issue, but it will no longer be considered ballot question advocacy under the Act and, therefore, it will no longer be subject to reporting requirements.

## V. THE BOARD DOES NOT OPPOSE COURT INTERVENTION.

The last section of RICLU's brief is devoted to arguing issues of standing and the need for court intervention. The Board does not challenge the standing of the RIACLU, as the Board intends to enforce the statute with respect to reporting and disclosure requirements to those persons who act in concert by soliciting money or services for ballot question advocacy.

The Board is not statutorily authorized to take a position on whether certain provisions of the Act are constitutional and, consequently, the need for court intervention is not opposed by the Board.

## CONCLUSION

For the reasons set forth herein, the reporting and disclosure requirements of the Act are constitutional, both facially and as applied to the RIACLU, and, therefore, this Court should deny the relief sought by the Plaintiff and enter judgment in favor of the Defendants.

Defendants,
By their Attorneys,

Raymond A. Marcaccio, Esquire (#3569)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

## CERTIFICATION

I hereby certify that a true copy of the foregoing *Trial Memorandum of the Rhode Island Board of Elections* was mailed, postage prepaid, to Howard A. Merten, Esquire, PARTRIDGE SNOW & HAHN, LLP, 180 South Main Street, Providence, RI 02903 and to James W. Ryan, Esquire, PARTRIDGE SNOW & HAHN, LLP, 180 South Main Street, Providence, RI 02903 on the 22nd day of November, 2005.