**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND AFFILIATE AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually and in his Capacity as Executive Director of Rhode Island Affiliate, American Civil Liberties Union, Inc.** *Plaintiffs* | : | |
| **Vs.** | : | **C.A. No. 04-487T** |
| **ROGER N. BEGIN, in his Official Capacity as Chairman of the Rhode Island Board of Elections, and THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, in their Capacities as Commissioners of the Rhode Island Board of Elections and GEORGE BOWEN, in his Official Capacity as Acting Executive Director** *Defendants* | : | |
| **THE GREATER PROVIDENCE CHAMBER OF COMMERCE** *Intervenor* | : | |

# DEFENDANTS' TRIAL MEMORANDUM IN OPPOSITION TO THE TRIAL MEMORANDUM FILED BY THE INTERVENOR

Submitted By:

Raymond A. Marcaccio, Esquire (#3569)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: December 6, 2005

# TABLE OF CONTENTS

Table of Authorities ........ ii

Introduction ........ 1

Statement of Facts ........ 1

Legal Argument ........ 3

I. The Chamber "Acts In Concert" With Its Members When It Solicits Specific Contributions For Ballot Question Advocacy ........ 3

II. The Administrative Burden Placed Upon the Chamber Does Not Render the PAC Filing and Reporting Requirements Unconstitutional. ........ 6

Conclusion ........ 8

# TABLE OF AUTHORITIES

Cases

*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391 (1990) ........................ 6

*Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981) ........................................ 4

*Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 107 S.Ct. 616 (1986) .................................................................................................................. 6, 7

*Federal Election Commission v. National Rifle Association of America*, 254 F.3d 173 (D.C.Cir. 2001) ....................................................................................................................... 5

*First National Bank v. Bellotti*, 435 U.S. 765 (1978) ..................................................................... 3

*Vote Choice v. DiStefano*, 814 F.Supp. 195 (D.R.I. 1993) ............................................................ 5

Statutes

R.I. Gen. Laws § 17-25-1 ................................................................................................ 2

R.I. Gen. Laws § 17-25-10 .............................................................................................. 4

## INTRODUCTION

Now come Defendants and submit this Trial Memorandum in opposition to the Trial Memorandum filed by Intervenor, the Greater Providence Chamber of Commerce (the "Chamber"). The majority of the legal issues that are to be resolved in this case have already been addressed in the Board's Trial Memorandum filed in opposition to the Rhode Island Affiliate, American Civil Liberties Union, Inc. ("ACLU"). All arguments and issues raised therein are expressly incorporated in this Trial Memorandum filed with respect to the allegations brought by Intervenor, the Greater Providence Chamber of Commerce (the "Chamber"). To the extent that the Chamber has raised additional legal or factual issues, they are addressed herein.

The State has a compelling interest in reporting ballot advocacy contributions. When the Chamber solicits contributions from its members in order to specifically fund ballot question advocacy, these contributions must be reported to the Board of Elections. The related administrative burdens placed upon the Chamber are not substantial enough to infringe on the Chamber's First Amendment rights.

## STATEMENT OF FACTS

As previously agreed, the Board accepts the background facts submitted by the Chamber in support of its Trial Memorandum to the extent that they are supported by documents and discovery produced in this case.

Of particular significance, is the Chamber's representation that "On occasion, the Chamber seeks to fulfill its duty to its members by representing the position of its membership on ballot questions through expenditures made to influence the approval or rejection of such questions, and to do so, ***it may seek funds from its members***." (Chamber Memorandum, p. 2) (Emphasis added.) As argued herein and in the Board's Trial Memorandum, this is the precise

activity that falls within the political action committee ("PAC") organizational and reporting requirements under the Rhode Island Campaign Contributions and Expenditures Reporting Act, R.I. Gen. Laws § 17-25-1 *et seq.* (the "Act") with respect to ballot question advocacy.

Additional facts, not recited by the Chamber, but set forth in its responses to discovery, are also critical to the resolution of the constitutionality of the challenged provisions of the Act as applied to the Chamber. In particular, the Chamber has indicated in its Answers to Interrogatories, number 6, that it has in fact established a PAC, the Providence Chamber PAC, as an independent association organized pursuant to the Act, which accepts contributions from both members and non members, which in turn are reported to the Board in accordance with the Act. Exhibit C1, attached hereto. The Chamber further elaborates that while the Chamber itself does not receive contributions from persons who are not members, the Chamber PAC does receive contributions from non members. Exhibit C1. (Answer to Interrogatory number 7)

The Board opposes the Chamber's answers to interrogatories number 8 and 10 regarding the impossibility, difficulty, expense and time consuming nature of identifying contributors as conclusory and not supported by any objective evidence. The assertion of "impossibility" is not a statement of fact but a conclusory statement on the ultimate issue of administrative burden which must be resolved by this Court. Exhibit C1. Indeed, this response is contradicted by the Chamber's answers to interrogatory numbers 6 and 7, which concede the existence of a Chamber PAC, with a duly appointed treasurer, which contributes to candidate campaigns and complies with the Act's reporting requirements. Exhibit C1.

The documents produced in response to the Board's Request for Production of Documents number 3, including numerous PAC reports completed and filed with the Board with

respect to various candidates, support the Board's position that the administrative burden of complying with the reporting requirements under the Act is neither difficult nor time consuming. Exhibit C2, attached hereto. Also pertinent to the administrative burden analysis is the fact that the Chamber does not have a policy against accepting contributions from unions, Answer to Interrogatory number 5, and that it has corporate members. Exhibit C1.

## LEGAL ARGUMENT

### I. THE CHAMBER "ACTS IN CONCERT" WITH ITS MEMBERS WHEN IT SOLICITS SPECIFIC CONTRIBUTIONS FOR BALLOT QUESTION ADVOCACY.

The Chamber has argued that the state does not have a compelling interest in regulating contributions made for the purpose of ballot question advocacy, as opposed to candidate campaigns, citing to *First National Bank v. Bellotti*, 435 U.S. 765, 790 (1978). However, the Chamber's argument goes too far, as the Supreme Court in *Bellotti* did not reject all justifications for regulation of ballot question advocacy, but recognized that while the risk of corruption was not a compelling interest *vis-a-vis* ballot questions, a state nevertheless had a legitimate and compelling interest in reporting ballot advocacy contributions for informational purposes. The Supreme Court specifically noted:

> Corporate advertising, unlike some methods of participation in political campaigns, is likely to be highly visible. Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected. In addition, we emphasized in *Buckley* the prophylactic effect of requiring that the source of communication be disclosed.

*First National Bank v. Bellotti*, 435 U.S. at 792, n. 32. (citations omitted.)

As articulated in the Board's Trial Memorandum, the Supreme Court has reaffirmed the validity of state reporting and disclosure statutes and regulations and has recognized that the

voting public is entitled to know the identity of persons supporting or contesting a ballot question. *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981).

R.I. Gen. Laws § 17-25-10 (a) requires contributions to be received through a duly appointed treasurer of a political action committee, so that there is person with the delegated responsibility to comply with the reporting requirements to the Board. When a person making the contribution is not "acting in concert" but is acting independently, that person is necessarily responsible for compliance and its identity is readily known. R.I. Gen. Laws § 17-25-10 (b). The simple reason that an entity such as the Chamber is deemed to be "acting in concert" when it solicits and accepts funds from its members is to ensure compliance with the Act and disclosure of the true identity of the persons who engaged in ballot question advocacy.

The Chamber argues that because the legislature chose the broadly defined term "person" as opposed to individual and described a "person" acting in concert as opposed to an "individual" acting in concert, the statute did not contemplate that associative entities can act in concert with its members. (Chamber Memorandum, p. 9-10) In making this argument, the Chamber points to definitions contained in Black's Law Dictionary of the terms "committee", "association", "corporation" and "organization." However, these definitions support the Board's interpretation of the Act, to wit, when a committee, association, corporation or other organization solicits funds from multiple sources for the common purpose of ballot question advocacy, it must register as a political action committee and comply with the Act's reporting requirements. On the other hand, when a corporation, such as the Chamber, not founded for the sole purpose of ballot question advocacy, uses its existing general funds for ballot question advocacy, it is making an independent expenditure of its own funds and is not required to comply with the PAC requirements.

The Board's position in this case is not contrary to the Board's representation to the Court in *Vote Choice v. DiStefano*, 814 F.Supp. 195, 198 (D.R.I. 1993) In *Vote Choice*, the Board stated that based upon its historical enforcement of the Act, a corporation was not required to form a PAC if it uses its own funds to make independent expenditures in support of or against a ballot question. Under its present articulation, as set forth in the August 2004 memorandum, a corporation is likewise only required to form a PAC when it solicits funds from more than one source for the purpose of ballot question advocacy; when the funds come from its existing general accounts, it is not required to form a PAC.

The Board concurs with the Chamber's statement that the personal expenditure of funds is considered to be a fundamental right. However, when the Chamber solicits specific contributions from its members, it is accepting monies separate from membership dues in order to fund ballot question advocacy. As such, these monies do not come from the Chamber's "own funds" existing in its general accounts or treasury, but come from multiple sources, namely its members' separate contributions. Therefore, these are not personal expenditures but must be reported as contributions.

It is certainly conceivable that a corporation could become a member of the Chamber, and as a member contribute funds in excess of membership dues specifically designated for ballot question advocacy. If the contribution is not reported to the Board, the Chamber could unwittingly act as a conduit for a corporation seeking to evade the campaign finance laws and seeking to hide its identity and interest from the voting public. *See Federal Election Commission v. National Rifle Association of America*, 254 F.3d 173, 193 (D.C.Cir. 2001) (inquiring whether the NRA's acceptance of corporate contributions could turn it into a potential conduit for corporate funding of political activity).

## II. THE ADMINISTRATIVE BURDEN PLACED UPON THE CHAMBER DOES NOT RENDER THE PAC FILING AND REPORTING REQUIREMENTS UNCONSTITUTIONAL.

An exposition of the characteristics of a non profit corporation or association that would be exempt from the PAC registration and related requirements is articulated in *Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 252, 107 S.Ct. 616, 624 (1986). The Supreme Court looked to: (1) whether the organization "was formed for the express purpose of promoting political ideas, and cannot engage in business activities;" (2) the absence of "shareholders or other persons affiliated so as to have a claim on its assets or earnings;" and (3) its independence from the influence of business corporations. *Id.* The PAC reporting statute was held unconstitutional as applied to *MCFL* because all of its educational activities were tied to its political goals, the members of *MCFL* fully supported its political interests and did not have an economic incentive to remain members should they disagree, and MCFL had an express policy of not accepting contributions from unions or business corporations. *Id.*

The administrative burdens analysis under *MCFL* was expressly applied to a chamber of commerce in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391 (1990). In *Austin v. Michigan Chamber of Commerce*, the Supreme Court found that contribution and expenditure limits could be applied to the Michigan Chamber of Commerce. In so ruling, the Court found that despite the fact that the Chamber was a non-profit corporation it exhibited characteristics more akin to a business association than a voluntary political association, whose members, like shareholders in a corporation, have an economic disincentive for disassociating with a corporation even if they disagree with its political activity. *Id* at 1398-1400. Also, the Chamber engaged in many activities not expressly tied to its political goals, but focused on business and economic issues. In addition, the Chamber was not independent from the influence

of business corporations, as three-quarters of its members were business corporations whose political contributions and expenditures could constitutionally be regulated by the state. *Id* at 1400.

The rationale of *Austin* is equally applicable in this case. The Chamber has no policy against accepting funds from unions, it includes corporate members, and provides an economic business incentive for individuals and corporation to remain members. Likewise, it engages in educational and economic activities and seminars not tied to its political goals. In short, the administrative burden placed upon the Chamber are not so substantial to result in an infringement of its First Amendment rights. Accordingly, the PAC reporting provisions of the Act are not unconstitutional as applied to the Chamber.[1]

The Chamber proffers no justification for exempting it or its members from the disclosure requirements under the Act, as it has admitted "The Chamber plans to solicit its members and the public at large for contributions and also to make expenditures for the support or defeat of ballot referendum questions in future elections..." (Chamber Memorandum, p. 7) There is similarly no factual basis for its conclusion that as a result of the PAC reporting requirements it "would be effectively silenced on issues of utmost concern to its members," as the Providence Chamber PAC has successfully operated as a conduit for member contributions for the support of candidates. It is difficult to comprehend why the administrative burdens for ballot advocacy reporting would be unduly burdensome, where these requirements are routinely met in the candidate campaign context. Exhibit C2.

---

[1] It should also be noted that despite the fact that the Supreme Court in *MCFL* struck down the PAC requirements *as applied* to *MCFL*, *MCFL* was nevertheless "bound to identify all persons making contributions over $200 who request that the money be used for independent expenditures" to satisfy the state's legitimate interest in disclosure. *Federal Election Commission v. Massachusetts Citizens for Life, Inc.*, 479 U.S. at 262, 107 S.Ct. at 630.

The fact that the Chamber has created the separate "Providence Chamber PAC" to support candidate campaigns undermines the Chamber's contention that requiring the same PAC organizational and reporting for the purpose of ballot question advocacy would be "impossible" "difficult" and "time consuming." Certainly, the person charged with administering the Providence Chamber PAC would have the proficiency to comply with the same reporting requirements for the purpose of ballot question advocacy.

Finally, it must be reiterated that the reporting requirements are only triggered by solicitation of funds for the purpose of ballot question advocacy. The Chamber's answer to interrogatory number 4, which addressed both members and non members for the period from January 2000 through December 2004, represents "No contributions were solicited or collected specifically for the purpose of in engaging in advocacy efforts in support of or against any ballot question on the state ballot." Exhibit C1. Thus, for this time period, the Chamber would not have been required to comply with the PAC organizational and reporting requirements of the Act.

## CONCLUSION

For the reasons set forth herein, and the Trial Memorandum of the Rhode Island Board of Elections previously filed with this Court, the reporting and disclosure requirements of the Act are constitutional, both facially and as applied to the Greater Providence Chamber of Commerce, and, therefore, this Court should enter judgment accordingly.

Defendants,
By their Attorneys,

Raymond A. Marcaccio, Esquire (#3569)
Christine M. Curley, Esquire (#4529)
OLIVERIO & MARCACCIO, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

**CERTIFICATION**

I hereby certify that a true copy of the foregoing Trial Memorandum of the Rhode Island Board of Elections in Response to Intervenor was faxed and mailed, postage prepaid, to Howard A. Merten, Esquire, PARTRIDGE SNOW & HAHN, LLP, 180 South Main Street, Providence, RI 02903 and to James W. Ryan, Esquire, PARTRIDGE SNOW & HAHN, LLP, 180 South Main Street, Providence, RI 02903 on the 6th day of December, 2005.