# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC., ET AL.
Plaintiffs

v.

ROGER N. BEGIN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE RHODE ISLAND BOARD OF ELECTIONS, ET AL.,
Defendants

THE GREATER PROVIDENCE CHAMBER OF COMMERCE,
Intervenor

C.A. No. 04-487/T

## REPLY MEMORANDUM

1. Defendants Concede That The Prohibition On Corporate Contributions And Contribution Limitations Are Unconstitutional. While the Board maintains that it cannot itself declare these statutory provisions unconstitutional, neither does it take issue with the legal authority or analysis cited by plaintiffs. Based upon controlling United States Supreme Court precedent, the Court should immediately declare unconstitutional as regards ballot question advocacy those portions of R.I.G.L. § 17-25-70.1(h) and (j) that prohibit corporate contributions and of R.I.G.L § 17-25-10.1(a) that limit contribution amounts

2. Defendants Have Implicitly Conceded That Their Interpretation Of "In Concert Activity" As Embodied In AO 95-01 And Its Reading of R.I.G.L. § 17-25-23 Is Unconstitutional. Nowhere in their twenty-seven page brief do defendants even attempt to

defend the definition of "in concert" activity set forth in AO 95-01, which, in turn, seeks to apply the factors set forth in R.I.G.L. 17-25-23 to ballot questions.[1]

Rather than defend its official, recently re-adopted, written definition of "in concert" activity, the Board declares—without citation to statute, rule, Manual Section or Advisory Opinion—that it "has not sought, and does not seek, to police mere coordinated conduct." Defendant's Brief, p. 4. That statement is, and cannot be interpreted as anything but, an abject repudiation of AO 95-01. AO 95-01 does nothing if not seek to police coordinated conduct. It contains six separately defined permutations of "in concert activity" meant to preclude coordination. In its penultimate paragraph, it prohibits providing "advice, directly or indirectly, as to how the expenditures may best be made" and any "direct or indirect coordination of expenditures between the different organizations." In its ultimate paragraph, it declares that advertising a position and listing the names of other sponsors "... would violate the prohibition against acting in concert with any other person, because, in that instance, there is clearly a coordination of efforts between the individual organizations and, therefore, the organizations are indeed acting in concert with each other." Exh. 44.

Defendants do not contend that plaintiffs misquote or misrepresent the terms of AO 95-01. Defendants do not even argue that plaintiffs have mischaracterized the reach and scope of AO 95-01 (and its interpretation of R.I.G.L. § 17-25-23). Instead, they abandon AO 95-01. Plaintiffs' constitutional indictment of AO 95-01 (and the Board's attempt to construe R.I.G.L. § 17-25-10(b) as set forth in AO 95-01) stands uncontradicted. It should be declared unconstitutional.

---

[1] Indeed, defendants mention AO 95-01 only three times—once as an historical reference, p. 3; once while distancing itself from the "broad language" of that opinion, p. 4; and once in a footnote, p. 5.

3. Defendants Expressly Concede That R.I.G.L. § 17-25-23 Is Not Applicable To Ballot Question Advocacy. Likewise, the Board does not attempt to defend the application of the standards of "in concert" activity set forth in R.I.G.L. § 17-25-23 to ballot question advocacy. Defendants acknowledge that "many of the express terms of § 17-25-23 cannot be literally applied to ballot questions." Defendants' Brief, p. 10.

Most telling of all, the Board's proposed regulations, attached to their papers as Defendants' Exhibit B2, defines "acting in concert" in terms diametrically contrary to the definition contained in AO 95-01. The last sentence of Section 2(4) of the proposed regulation is an express repudiation of R.I.G.L. § 17-25-23 as applied to ballot question. It states:

> "***The factors enumerated at R.I.G.L. § 17-25-23 are*** applicable to contributions and expenditures on behalf of candidate and are ***not applicable to ballot question advocacy.***

Defendants' Exhibit B2. Plaintiffs made this precise point in their Trial Brief—in almost the exact words: "On its face, then, the statutory definition of in concert activity does not apply to ballot question advocacy." Plaintiffs' Trial Brief, p. 22.

Of course, applying the standards of R.I.G.L. § 17-25-23 to ballot questions is precisely what AO 95-01 attempts to do. That is why the Advisory Opinion is so tragically flawed and must be declared unconstitutional.

4. The Board's Submission Supports The Statutory Construction Advanced By Plaintiffs. The Board declares unabashedly in its proposed regulations that "***the factors enumerated in R.I.G.L. § 17-25-23 ... are not applicable to ballot question advocacy.***" Defendants Exh. B2. It does not and cannot explain how it squares that position with the pronouncement in R.I.G.L. § 17-25-10(b) that: "Whether a person is acting in concert ... ***shall be determined by application of the standards set forth in § 17-25-23.***"

Plaintiffs can and did. The answer is that the legislature knew what it was doing when it wrote § 10(b) and § 23. The concept of "in concert" activity in § 23 is not "applicable" to ballot question advocacy precisely because it was not meant to apply to ballot question advocacy. It was meant to apply to candidates. The Court should construe the statute as outlined in Plaintiffs' Trial Brief, precisely because that interpretation solves this dilemma.

5. <u>Defendants' Vague And Prospective Assurances Of How It "Enforces" Its Own Recently Re-Adopted, Written Pronouncement Contradict And Ignore The Terms Of That Very Pronouncement And Should Not Prevent This Court From Declaring AO-95-01 And R.I.G.L. § 17-25-10(B) As Applied To Ballot Questions Unconstitutional</u>. None of the cases cited by Defendants stand for the proposition that a state agency can adopt a written interpretation of a statute and then enforce that statute in a manner completely at odds with its recent enactment. To state the principle reveals its absurdity.

Defendants' attempts to bring this case under the umbrella of deference to agency determinations are misguided. This is not a case, for example, where the agency asks the court to defer to regulations duly promulgated pursuant to the Administrative Procedures Act. *Parkway Towers Associates v. Godfrey,* 688 A.2d 1289 (R.I. 1997). It is not a case seeking deference to an agency's determination that 27 days of absence constituted more than "de minimus" absences pursuant to an earlier Commissioner of Education ruling. *Asadoorian v. Warwick School Committee*, 691 A.2d 573 (RI. 9997).

Rather, in this case, the agency asks the Court to ***ignore*** its written interpretation completely—and rely instead on, alternatively, an unwritten "enforcement policy" or a set of proposed regulations that contradict its earlier written pronouncements and the terms of the enabling statute—at least as the Board reads it. The Court should do neither.

Defendants have declared that the operative statute is "ambiguous and impractical, resulting in an unenforceable law," (Exh. 64, Ans. No. 9), and "in need of legislative clarification" (Exhs. 53, 56). Defendants have reversed field back and forth, back and forth on what is and is not permissible and prohibited. Their submission to this Court and the attached proposed regulations are just another example of that.

The Court should adopt an interpretation of the Statute that eliminates this confusion—"in concert" activity and R.I.G.L. § 17-25-23 do not apply to ballot question advocacy. Failing that, it should declare AO 95-01 and R.I.G.L. § 17-25-10(b) and 17-25-23 unconstitutionally vague, overbroad and burdensome as applied to ballot question advocacy.

That is the case presently before this Court. Those are the enactments challenged. AO 95-01, as well as the statutory provisions prohibiting corporate contributions and limiting contribution amounts, are currently having a present, direct and deleterious impact on the First Amendment rights and activities of Rhode Island citizens, including the RI ACLU and the Family Life Center. Tens of thousands of dollars are at risk of being lost right now because of these regulations and statutes. Concrete funding for political activity that the RI ACLU and its allies deem to be critical is being held up right now. See Plaintiffs' Statement of Facts Nos. 25-37. This is not a situation where the Court should take a wait and see attitude on yet another set of proposed regulations.

Further, it remains to be seen whether any such regulations are actually passed. The Board declared in 1996—almost ten years ago—that the statute needed clarification. This suit has been pending for more than a year. It was not until two weeks after plaintiffs filed their Trial Brief that the Board unveiled new proposed regulations—regulations never shown to or discussed with the RI ACLU prior to their submission to this Court. The Board should not be

allowed to ask the Court to refrain from acting in the face of present, actual and irreparable harm when it has failed to act for so long.

Should different statutes or regulations be adopted at some point down the line, they could perhaps be the subject of a different case based on concrete enactments.[2] What is more, the Board is not prejudiced by the Court resolving this case now. The Board has said it does not object to Court intervention. It does not defend AO 95-01. It agrees (now) that R.I.G.L. § 17-25-23 is not applicable to ballot question advocacy. A Court ruling declaring that AO-95-01 is unconstitutional will clarify a grievously confusing situation and statute.

6. Defendant Fails to Establish A Record To Support The State's Compelling Interest. In an effort to justify the Board's disclosure requirements, Defendant mistakenly suggests that the mere declaration of "disclosure" as a compelling state interest is sufficient to meet the stringent Constitutional standards of strict scrutiny. The Board makes this argument because it has presented no record or findings of fact to support its so-called need for disclosure in the context of ballot question advocacy.

Defendants' cases reveal the need for an evidentiary showing to support the Board's regulation. *Nixon v. Shrink Missouri Government PAC* is a candidate case. Even in that context, however, the Supreme Court specifically noted that it has "never accepted mere conjecture as adequate to carry a First Amendment burden." *See Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 392 (2000). Likewise, *Missouri Republican Party v. Lamb* cannot be cited for the position that mere declaration is sufficient to establish a compelling state interest. It specifically addresses the need for "objective evidence of facts." *Missouri Republican Party v. Lamb*, 270 F.3d 567, 570 (8th Cir. 2001).

---

[2] The RI ACLU has concerns about the proposed regulations. However, it is premature to discuss them in this forum. The regulations ultimately passed could be substantially different, for better or worse, than the present proposal.

The Board's reliance on *First National Bank v. Bellotti* is particularly misplaced, as it directly contradicts the Board's position. This seminal decision establishes that a mere declaration is not sufficient to show a compelling state interest in ballot question cases. *Montana Chamber of Commerce v. Argenbright*, 226 F.3d 1049, 1057 (9th Cir. 2000). Rather, a compelling state interest must be supported by a record of findings of fact, particularly when there is no history of corruption or misconduct, but rather one of a health flow of information. *See, Montana Chamber of Commerce v. Argenbright*, 28 F.Supp. 2d 593, 598-99 (D. Mont. 1998).

The *Bellotti* Court declared: "if [the state's] arguments were supported by record or legislative findings that corporate advocacy threatened imminently to undermine democratic processes, thereby denigrating rather than serving First Amendment interests, these arguments would merit our consideration." *First Nat. Bank v. Belloti*, 435 U.S. 765, 789 (1978). Here, the Board does not support any need for broad, compelled disclosure in the ballot context "by record or legislative findings." Rather, defendants concede that they are "without sufficient information" to assess whether voters did not have adequate information about either any ballot question or the identity of persons or entities supporting or opposing ballot questions. (Exh. 64, Ans. Nos. 3, 4). Defendants have no facts to support their compelling need. In their brief, they go so far as to point to instances where disclosures were actually and voluntarily made as purported proof of the need for disclosure. Defendants' Brief, p. 20-21. Even their hypothetical concern is disproven on this record.

Beyond that, defendants urge this Court to rely on dicta and pronouncements in candidate cases to preserve the need for broad compelled disclosure. *C&C Plywood Corp. v. Hanson*, cited with favor by the *Bellotti* Court, declined to follow such a path:

> The other justification urged by the State to support the constitutionality of this amendment is that it is necessary to preserve the integrity of the electoral process. However, the only part of the record which comes close to supporting this rationalization of the amendment is set forth on page 23 of the defendant's brief. There it is urged that judicial notice could be taken of the proposition that "corporations have laid their heavy hands upon the operations of Montana Government..." There is no legislative finding or history that indicates that what was once true is now true or that this was the reason for enacting the 1975 Amendment.

*C & C Plywood Corp. v. Hanson*, 420 F.Supp. 1254, 1265 (D. Mo. 1976).

7. The Reporting Requirements On Multi-Purpose Public Advocacy Entities Are Substantial And Confusing. The Board's claim that the RI ACLU has presented only "conclusory" or "blanket" explanations of the burdens imposed by reporting requirements turns on ignoring the existence of AO 95-01 and the record. It essentially asks the Court to ignore the reporting problems caused by the overbreadth of AO 95-01, documented at length in Plaintiff's Trial Brief and uncontradicted by defendants. The Board then points to the "conclusory" language in Plaintiffs' Statement of Fact No. 12, but ignores the supporting factual statements in preceding and subsequent paragraphs. See Plaintiffs' Statement of Facts, Nos. 4-11, 13-14, 19, and 25-27. These paragraphs document that the RI ACLU is a long-standing, multi-purpose entity that is involved in many issues at once, often involved in the same issues over a long period of time, with fundraising taking place through mailings that discuss a variety of issues.

The Board points exclusively to filings by small, single-issue, single ballot question, entities that file PAC reports. It then argues that the burdens of filing are not substantial. These filings are inapposite. The problems of determining when "in concert" activity starts and stops, and who contributed what for what purpose are much simpler for such single-issue entities.

## CONCLUSION

This Court should enter judgment granting plaintiffs the relief requested in their complaint. In light of the exigencies outlined in this and Plaintiffs' Trial Brief and the existence of present and ongoing irreparable harm, Plaintiffs respectfully request that this Court issue its decision at the earliest possible time.

RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC. AND STEVEN BROWN, INDIVIDUALLY AND IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC.

By Their Attorneys,

PARTRIDGE SNOW & HAHN LLP

Howard A. Merten (#3171)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: December 9, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY MEMORANDUM was mailed, postage prepaid, on this 9th day of December, 2005 to:

Raymond A. Marcaccio, Esq.
Christine M. Curley, Esq.
Oliverio & Marcaccio, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

James Ryan, Esq.
Partridge Snow & Hahn LLP.
180 South Main Street
Providence, RI 02903

[signature]

830832_1/800056