**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RHODE ISLAND AFFILIATE AMERICAN CIVIL LIBERTIES UNION, INC., ET AL.<br>Plaintiffs<br><br>v.<br><br>ROGER N. BEGIN, in his official capacity as Chairman of the Rhode Island Board of Elections, ET AL.<br>Defendants<br><br>GREATER PROVIDENCE CHAMBER OF COMMERCE<br>Intervenor<br><br>THE RHODE ISLAND FOUNDATION and UNITED WAY OF RHODE ISLAND<br>Intervenor | C.A. No. 04-487/T |

**VERIFIED COMPLAINT**

**PARTIES**

1. Intervenor-Plaintiff the Rhode Island Foundation ("RI Foundation") is a non-profit corporation organized under Rhode Island law. Its principal activity is creating connections between private charitable sources and projects beneficial to the public good.

2. Intervenor-Plaintiff the United Way of the Rhode Island ("United Way") is a non-profit corporation organized under Rhode Island law. Its principal activities are focused on reducing the number of Rhode Islanders in need.

3. Defendant Roger N. Begin is the Chairman of the Rhode Island Board of Elections (the "Board"). He is sued in his official representative capacity, as the chief executive officer, managing agent and commissioner of the Board.

4. Defendants Thomas V. Iannitti, Judith H. Bailey, John A. Daluz, Florence G. Johnson, Frank J. Rego and Raymond A. Xavier are all commissioners of the Board and are sued in their representative capacities. Defendant George Bowen is Acting Executive Director of the Board and is sued in his representative capacity.

5. The Board is charged with the responsibility of enforcing the campaign finance and election laws that are the subject of this action.

## JURISDICTION

6. This is an action under the First and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. § 1983 for declaratory and injunctive relief against unconstitutional provisions of state law and unconstitutional enforcement of state law.

7. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy.

## FACTS

8. The RI Foundation, through the legacy of its donors, and the United Way, through its solicitation of annual contributions, raise funds from various segments of the Rhode Island community to support their work in the community. This work includes advocating for and against ballot questions and contributing and expending money to advocate their positions. To maximize their effectiveness, the RI Foundation and the

United Way have decided to work together and also to collaborate with other charitable and community-based organizations.

9. The RI Foundation is a nonprofit philanthropic organization serving the Rhode Island community since 1916. Its mission includes "partnering" with other charitable and community-based organizations in Rhode Island to make the most effective use of available resources. The RI Foundation's activities range from gender-equality initiatives to community-development and affordable-housing projects. In pursuing these charitable activities, the RI Foundation cooperates and collaborates with the United Way. as well as with many other charitable non-profit organizations and community groups. The capacity to support and advocate for or against ballot referenda with other philanthropic and community-based organizations is an essential part of the RI Foundation's strategy for community impact.

10. Since 1926, the United Way has focused on reducing the number of Rhode Islanders in need. Its activities include convening broad coalitions to identify high priority community issues. The United Way collaboratively develops and implements solutions by building partnerships, forging consensus, and leveraging resources with other charitable and community-service organizations. Traditionally the United Way functioned as a community service fundraiser. Since 2001 its strategy has included implementing solutions that help people directly and fostering systemic changes through public policy to reduce need in the future. The United Way accomplishes this mission by engaging other non-profit organizations, the private sector, faith-based organizations, and various branches and departments of government.

11. The United Way supports its work in the community through annual solicitation of contributions from the Rhode Island community. Ballot question advocacy, which is only possible through collaborations with other charitable and community organizations, is an essential part of the United Way's strategy.

12. Both the RI Foundation and United Way focus their resources on some of the most prominent social and economic issues in the state. As a result, they have a compelling interest in supporting ballot-initiative campaigns.

13. In fact, the RI Foundation and United Way intend collaborate with other organizations, contribute and expend funds for, and to take positions on ballot questions in the November 2006 statewide election.

**Rhode Island Family Life Center**

14. The RI Foundation approved a $79,000 grant to the Rhode Island Family Life Center ("Family Life Center"), but conditioned the release of the funds on the appropriate relief being obtained from the Court.

15. The Family Life Center received $15,000.00 from the RI Foundation in early 2005 in order to persuade the General Assembly to put the "Right to Vote" question regarding voting rights for probationers and parolees on the ballot. Subsequent to their success with the General Assembly, the Family Life Center then applied for a grant from the RI Foundation to support its "Right to Vote" campaign. This grant would permit the Family Life Center to advocate for the voting rights ballot question in the November 2006 election.

16. The Family Life Center is a non-profit, community-based organization leading Rhode Island's "Right to Vote" campaign. This coalition of community

organizations focuses on supporting passage of the voting rights constitutional ballot question. The Family Life Center wants to inform voters about the ballot question and support its passage.

17. In their grant application, the Family Life Center proposed a specific timetable for their "Right to Vote" campaign. This timetable is no longer viable because, under § 17-25-10(b), the RI Foundation cannot release the funds to the Family Life Center without violating the law. For example, under the terms of the grant the Family Life Center must consult with the RI Foundation about potential candidates for a campaign manager position. Section 17-25-10(b) prohibits this collaborative activity. Moreover, without the RI Foundation funds, the Family Life Center cannot hire a campaign manager, thereby preventing the campaign from moving forward.

18. The funds from the RI Foundation for the "Right to Vote" campaign are urgently needed because the November 2006 election is fast-approaching. Before securing national grants required for their campaign, the Family Life Center needs local funding. The Family Life Center is depending on the RI Foundation to fund roughly one-third of their campaign. Without immediate access to the RI Foundation's financial support, national charitable organizations will likely not support the Family Life Center and the campaign to support the right to vote will end before it begins.

19. The ability of the Family Life Center to advocate for the voting rights ballot question depends on the ability of the RI Foundation to provide immediate financial support – something it cannot do under the present state of the Rhode Island campaign finance law. There are now over 13,000 disenfranchised Rhode Islanders living in the community that will be directly impacted by the result of the November

2006 voting rights ballot question. The RI Foundation is one of very few organizations in Rhode Island able to provide the level of resources required by the Family Life Center.

**HousingWorks RI**

20. In 2002, the United Way sponsored community-wide Summits involving over 800 Rhode Islanders from all geographic areas of the state and economic and social backgrounds. Based on the findings of those sessions that took place over four days, United Way's board of directors determined that affordable housing was a critical need for Rhode Island and subsequently identified it as a priority focus area for the organization.

21. Together with over one-hundred other organizations and individuals-- including representatives from the business, non-profit, environmental, faith-based and philanthropic communities-- the RI Foundation and the United Way collaborate on behalf of affordable housing projects as the HousingWorks RI coalition. HousingWorks RI is committed to developing affordable housing for all Rhode Islanders.

22. In 2003, both institutions realized that their customary grants to support affordable housing alone were not enough to address the scale of the affordable housing crisis in Rhode Island. Dramatic escalations of rent and home prices in Rhode Island created a growing crisis for working families and businesses.

23. Both organizations joined with Rhode Island Housing to convene a dialogue among all the principal stakeholders – business, community advocates, developers, state and local government – about how to best raise awareness about the issues involved and about what approaches would have the greatest long-term

ameliorative impact. HousingWorks RI was established in 2004 in response to these efforts.

24. HousingWorks RI is not an independent organization. It exists under the fiduciary umbrella of the RI Foundation and is largely managed by a complement of RI Foundation and United Way staff. The Co-Chairs of HousingWorks RI are the Executive Director of Rhode Island Housing, the President/C.E.O. of the United Way, and the President/C.E.O. of the Rhode Island Foundation. The funds for HousingWorks RI are almost entirely provided by the RI Foundation, the United Way, and Rhode Island Housing. RI Foundation administers the funds.

25. The RI Foundation, the United Way, and Rhode Island Housing spent the past two years investing considerable resources in this combined effort. They advocated for passage of the Low and Moderate Income Housing Act, funded the development of a State Strategic Housing Plan, supported the Governor in creating the first ever Office of Housing and Community Development, and secured $7.8 million in the 2005 legislative session for affordable housing programs.

26. All of this activity created an organizational infrastructure, brand, and voice for HousingWorks RI. It also served the broader interest of developing public understanding that a housing crisis exists in Rhode Island that impacts every facet of the community.

27. The underlying strategy of the two-year HousingWorks RI enterprise is to put this collaboration in a position to meaningfully advocate for a significant increase in the public investment in housing production. Based on successful campaigns used across the county, the RI Foundation, working with the United Way and Rhode Island Housing,

created HousingWorks RI as the vehicle for promoting passage of an affordable housing bond question.

28. The campaign is now in that position. On January 30, 2006 HousingWorks RI announced its 2006 Policy Platform. The centerpiece of this program is advocating for and obtaining a $75 million bond for housing. By taking this case directly to the voters, the campaign will serve its twofold purpose of public education and securing permanent solutions to an entrenched social and economic problem.

29. If HousingWorks RI's efforts are successful and legislation passes to place this issue on the November 2006 ballot, voters in Rhode Island will decide whether to approve a $75 million bond to facilitate the production of affordable housing. HousingWorks RI is currently working to place this important question on the November 2006 ballot. This would be the first bond issue of its kind for affordable housing in Rhode Island and, if passed, it would be one of the largest voter-approved bonds in Rhode Island history.

30. The financial contributors to HousingWorks RI have appropriated hundreds of thousands of dollars to ensure the campaign's success, to advance the HousingWorks RI agenda, and to position the campaign for a successful referendum campaign in the fall.

31. The success of this ballot referendum depends on the collaboration and commitment of all partners involved in HousingWorks RI. Sections 17-25-10(b), 17-25-10.1(h),(j), however, prohibit this collaboration from moving forward with the ballot question campaign. Any advertisements supporting the affordable housing ballot

question sponsored by the United Way with our partners are similarly prohibited by § 17-25-10(b).

32. The United Way is prohibited from contributing to Political Action Committees. If HousingWorks RI is required to form a PAC to engage in ballot-question advocacy, it would lose funding from one of its largest supporters.

**The Rhode Island Campaign Contributions and Expenditures Reporting Act**

33. The RI Foundation and the United Way also are prohibited from undertaking any collaborative ballot-advocacy activities by the Rhode Island Campaign Contributions and Expenditures Reporting Act, R.I. Gen. Laws §§ 17-25-1, *et seq.* (the "Act"). The Act governs and restricts campaign contributions and expenditures.

34. Under § 17-25-13, a willful and knowing violation of the Act constitutes a criminal offense punishable by a fine of up to $1,000 per violation.

35. Under § 17-25-3(8) a "person" is defined as an individual, partnership, committee, association, corporation and any other organization.

36. As non-profit philanthropic corporations, the RI Foundation and the United Way qualify as "persons" under § 17-25-3(8).

37. Section 17-25-10(a) provides:

> "No contribution shall be made or received, and no expenditures shall be directly made or incurred, to support or defeat a candidate or to advocate the approval or rejection of any question in any election except through:
> (1) The duly appointed campaign treasurer, or deputy campaign treasurers, of a political party committee;
> (2) The duly appointed campaign treasurer or deputy campaign treasurers of the candidates;
> (3) The duly appointed campaign treasurer, or deputy campaign treasurers, of a <u>political action committee</u>." (Emphasis added)

38. Section 17-25-10(b) provides:

> "It shall be lawful for any person, not otherwise prohibited by law and not acting in concert with any other person or group, to expend personally from that person's own funds a sum which is not to be repaid to him or her for any purpose not prohibited by law to support or defeat a candidate or to advocate the approval or rejection of any question....Whether a person is 'acting in concert with any person or group' for purposes of this subsection shall be determined by application of the standards set forth in § 17-25-23." (Emphasis added).

39. Section 17-25-23 refers only to candidates for general office and provides a test for determining whether an expenditure by a person, political party committee, or political action committee ("PAC") will be considered to be a contribution received by, or expenditure made by, a candidate for general office.

40. All of the tests set forth under § 17-25-23 are based on the relationship between the candidate for general office or the candidate's committee or agent and the person, political party committee or PAC making the expenditure or contribution.

41. Section 17-25-10.1(a) imposes limitations on the amounts that a person, PAC, or political party can contribute and/or accept for purposes of advocacy for or against ballot questions.

42. Sections 17-25-10.1(h) and (j) prohibit corporations, including non-profit corporations, from making contributions for purposes of advocacy for or against ballot questions.

43. In 1995 the Board issued Advisory Opinion # 95-01 ("1995 Opinion"), which interprets § 17-25-10(b). Although the Board recognized that the "in concert" test in § 17-25-10(b) applied only to candidate elections explicitly, the Board decided that it would deem a person to be acting "in concert" in the context of ballot question advocacy under § 17-25-10(b) as well.

44. The 1995 Opinion was superseded by Advisory Opinion # 96-01 in 1996. The 1995 Opinion, however, was subsequently reinstated in 2004 and represents the Board's current interpretation of § 17-25-10(b).

45. Based on the 1995 Opinion, the RI Foundation and the United Way would be deemed to be acting "in concert," in violation of § 17-25-10(b), if they pooled resources to advocate for a ballot question, jointly-sponsored advertisements or promotional campaigns to advocate for ballot questions, or made contributions to other non-profit organizations advocating for a ballot question.

46. The RI Foundation and the United Way will engage in "in concert" activity if they advocate for the affordable housing bond question.

47. The RI Foundation's plan to grant the Rhode Island Family Life Center funds to advocate for passage of the voting rights ballot question is also prohibited "in concert activity."

48. As shown below, without such contributions and expenditures, the RI Foundation and the United Way will be unable to advocate their positions effectively with respect to ballot questions.

49. Under the Act, persons acting "in concert" must form a PAC before undertaking any ballot-question advocacy. The PAC requirements go beyond any interest the state may have in informational disclosure of expenditures and contributions in the ballot question context.

50. The PAC requirements severely limit permissible contributions and expenditures in the context of constitutionally-protected ballot advocacy.

51. At all times relevant to the matters set forth in the Complaint, the defendants were acting under the color of state law.

52. A present and actual controversy exists between the parties in light of the unconstitutional limitations imposed on the RI Foundation and the United Way by certain provisions of the Act, by the Board's unconstitutional interpretation of state election laws, and by the RI Foundation and the United Way's ballot-advocacy plans for the November 2006 election.

53. The plaintiffs have no adequate remedy at law.

**COUNT I**
**(THE PROHIBITION ON CORPORATE CONTRIBUTIONS SET FORTH IN §§ 10-25-10.1(h) AND (j) VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS)**

54. Paragraphs 1 through 53 are incorporated as if set forth fully herein.

55. Sections 17-25-10.1(h) and (j)'s prohibitions on corporate contributions impairs the RI Foundation and the United Way's freedom of expression and association.

56. The state has no compelling interest in prohibiting corporate contributions to support or oppose ballot questions.

57. A prohibition on corporate contributions for purposes of supporting or defeating ballot questions is unconstitutional under the First Amendment, as made applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

58. The RI Foundation and the United Way intend to make contributions and expenditures to support ballot questions in the November 2006 election; there is a credible threat of prosecution under §§ 17-25-10.1(h) and (j); and these sections chill the

RI Foundation and the United Way's First Amendment freedoms of expression and association.

**COUNT II**
**(CONTRIBUTION LIMITATIONS SET FORTH IN § 17-25-10.1(a) VIOLATE THE FIRST AMENDMENT)**

59. Paragraphs 1 through 58 are incorporated as if set forth fully herein.

60. The state has no compelling interest in limiting contributions to support or oppose ballot questions.

61. Section 17-25-10.1(a)'s limitations on the amounts of contributions that a person, PAC and political party committee can make and/or accept from a single source with respect to ballot questions impairs freedoms of expression and association and are unconstitutional.

62. The imposition of contribution limitations for purposes of supporting or defeating ballot questions is unconstitutional under the First Amendment as made applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment.

63. The RI Foundation and the United Way intend to make contributions in excess of the limits set forth in § 17-25-10.1(a) to support ballot questions in the November 2006 election; there is a credible threat of prosecution under § 17-25-10.1(a); and this section chills plaintiff's First Amendment freedoms of expression and association.

**COUNT III**
**(THE BOARD'S 1995 OPINION IS UNCONSTITUTIONALLY OVERBROAD)**

64. Paragraphs 1 through 63 are incorporated as if set forth fully herein.

65. The Board's definition of "in concert" activity under § 17-25-10(b) for purposes of ballot question advocacy as set forth in the 1995 Opinion intrudes on a substantial amount of constitutionally protected activity.

66. The 1995 Opinion is unconstitutionally overbroad because it either prohibits, or leaves open the possibility of punishment for, constitutionally-protected conduct.

**COUNT IV**
**(SECTION 17-25-10(b) IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD IF APPLIED TO BALLOT QUESTIONS)**

67. Paragraphs 1 through 66 are incorporated as if set forth fully herein.

68. To the extent that § 17-2-10(b), by incorporating the test for "in concert" activity set forth in § 17-25-23, is interpreted or applied to prohibit the RI Foundation and the United Way from making "in concert" expenditures for ballot-question advocacy, the law intrudes on a substantial amount of constitutionally-protected activity.

69. To the extent that § 17-25-10(b) criminalizes "in concert" expenditures for ballot-question advocacy, the law is unconstitutionally vague on its face because neither § 17-25-10(b) nor § 17-25-23 specify a standard of conduct for determining whether a person is acting "in concert" for ballot question advocacy.

70. To the extent that § 17-25-10(b) criminalizes "in concert" expenditures for ballot-question advocacy, the law is unconstitutionally vague as applied because § 17-25-10(b) and § 17-25-23 fails to make the constitutional distinction between ballot advocacy questions and candidate-centered elections.

71. Section 17-25-10(b) is unconstitutionally overbroad because it either prohibits, or leave open the possibility of punishment for, constitutionally-protected conduct, including "in concert" expenditures for ballot-question advocacy.

**COUNT V**
**(THE 1995 OPINION AND § 17-25-10(b) VIOLATE THE PLAINTIFFS' FIRST AMENDMENT RIGHTS)**

72. Paragraphs 1 through 71 are incorporated as if set forth fully herein.

73. Section § 17-25-10(b)'s prohibition on "in concert" expenditures with respect to ballot questions imposes a burden on the plaintiffs' First Amendment rights (as made applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment of the United States Constitution) of expression and association that is not narrowly-tailored or closely-drawn.

74. The RI Foundation and the United Way necessarily act "in concert" if they engage in ballot-advocacy activities for the November 2006 election.

75. The Act prohibits their First Amendment ballot-advocacy activities.

76. The state has no compelling reason to prohibit the RI Foundation and the United Way from acting "in concert" to engage in these activities other than informational disclosure.

77. The PAC restrictions far exceed the state's disclosure interest. They impermissibly prohibit and limit the RI Foundation and the United Way's advocacy for ballot questions. This is protected First Amendment activity.

78. The 1995 Opinion established that the Board would deem the RI Foundation and the United Way to be in violation of the "in concert" prohibition set forth in § 17-25-10(b) by exercising their constitutionally protected rights, including, but not

limited to, making or accepting contributions; coordinating or arranging expenditures with any other person, or advising or counseling "other persons on the plans, projects, and needs relating to the aiding or defeating of the election of the ballot question" without forming a PAC. All of the restrictions and requirements for ballot-question advocacy set forth in the 1995 Opinion violate the plaintiffs' First Amendment rights of association and expression, as such rights are applicable to the State of Rhode Island through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

79. The RI Foundation and the United Way intend to make expenditures with other entities, and otherwise act "in concert" as defined in the 1995 Opinion, for the purpose of supporting or defeating ballot questions in the November 2006 election without forming a PAC; there is a credible threat of prosecution under the 1995 Opinion and §17-25-10(b); and the 1995 Opinion and § 17-25-10(b) chill the RI Foundation and the United Way's First Amendment freedoms of expression and association.

**COUNT VI**
**(VIOLATION OF 42 U.S.C. § 1983)**

80. Paragraphs 1 through 79 are incorporated as if set forth fully herein.

81. The RI Foundation and the United Way's ability to collaborate, make contributions, and expend funds for ballot-question advocacy are rights protected by the First Amendment of the United States Constitution, which is made applicable to the states through the Due Process Clause of the Fourteenth Amendment.

82. The Defendants, as representatives of the Board, have final policy-making authority regarding the Act pursuant to R.I. Gen. Laws § 17-25-5.

83. The Defendants made deliberate choices regarding the interpretation and enforcement of certain provisions of the Act.

84. The Defendants, acting under the color of state law, have deprived and are depriving the RI Foundation and United Way of their First Amendment rights.

85. The Defendants' deprivation of the RI Foundation and the United Way's rights is without due process of law and in violation of the First and Fourteenth Amendments of the United States Constitution.

86. As a result of the Defendants' unconstitutional deprivation of rights under color of law, the RI Foundation and the United Way have sustained and are continuing to sustain irreparable harm to their First Amendment rights of advocacy and association.

**COUNT VIII**
**(THE BOARD'S 1995 OPINION MISINTERPRETS STATE STATUTES)**

87. Paragraphs 1 through 86 are incorporated as if set forth fully herein.

88. Section 17-25-10(b) incorporates a test for acting "in concert" that is set forth in § 17-25-23.

89. On its face, § 17-25-23 refers expressly and only to candidate elections.

90. Section 17-25-23 does not contain the words "question" or "ballot question."

91. The General Assembly gave evidence of its intention to limit the "in concert" expenditures prohibition to candidate elections only by incorporating a test for acting "in concert" that refers expressly and only to candidate elections. Section 17-25-23 does not reference ballot questions and that the expenditure prohibitions should not apply to ballot question advocacy.

92. The Board's 1995 Opinion that § 17-25-10(b) prohibits any "in concert" expenditure with respect to ballot questions is improper as a matter of statutory interpretation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Declare that the Board's 1995 Opinion is unconstitutionally overbroad;

B. Declare that the prohibition on corporate contributions set forth in §§ 17-25-10.1(h) and (j) is unconstitutional under the First Amendment;

C. Declare that the definition of "in concert" activity set forth in § 17-25-23 and incorporated into § 17-25-10(b) is unconstitutionally vague and overbroad as applied to the solicitation or expenditure of funds to advocate the approval or rejection of ballot questions;

D. Declare that the contribution limitations set forth in § 17-25-10(a) are unconstitutional under the First Amendment to the extent the law limits contributions for the purpose of supporting or defeating ballot questions;

E. Declare § 17-25-10(b) and the Board's 1995 Opinion are unconstitutional under the First Amendment to the extent that they prohibit any entity from: (1) soliciting or making "in concert" contributions or expenditures with respect to ballot questions; and (2) otherwise acting together with another entity to advocate for or against ballot questions without complying with PAC requirements;

F. Permanently enjoin the Board from taking any enforcement action against entities pursuant to the 1995 Opinion or § 17-25-10(b) for making "in concert" expenditures to advocate for or against a ballot question without forming a PAC;

H. Grant Plaintiffs the aforesaid injunctive relief as a result of the Board's violation of 42 U.S.C. § 1983;

I. Award attorney's fees pursuant to 42 U.S.C. § 1988;

J. Declare the Board's interpretation of § 17-25-10(b) as reflected in the 1995 Opinion to be in conflict with state law as a matter of statutory interpretation; and

J. Grant Plaintiffs their costs and such other further and equitable relief as may be deemed just and proper.

THE RHODE ISLAND FOUNDATION and
THE UNITED WAY OF RHODE ISLAND
By Their Attorneys,

Robert G. Flanders, Jr. (#1785)
Mitchell R. Edwards (#6942)
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (fax)

Dated: March 1, 2006

**VERIFICATION**

I, Ari A. Matusiak, Director of Strategy at the Rhode Island Foundation, hereby certify, under the penalties of perjury: (a) that I have read the foregoing Verified Complaint; and (b) that the allegations contained in the Verified Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true.

Ari A. Matusiak

Subscribed and sworn to before me this 28th day of February, 2006.

Notary Public

My Commission Expires 7-31-06
ID # 39712

**VERIFICATION**

I, Allan Stein, Senior Vice President for Public Policy at the United Way of Rhode Island, hereby certify, under the penalties of perjury: (a) that I have read the foregoing Verified Complaint; and (b) that the allegations contained in the Verified Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true.

Allan Stein

Subscribed and sworn to before me this 28th day of February, 2006.

Notary Public

My Commission Expires 7-31-06
ID #39712

**CERTIFICATE OF SERVICE**

| | |
|---|---|
| Howard A. Merten, Esq.<br>Partridge, Snow & Hahn LLP<br>180 South Main Street<br>Providence, RI 02903<br>861-8200<br>Fax: 861-8210 | James W. Ryan, Esq.<br>Partridge, Snow & Hahn LLP<br>180 South Main Street<br>Providence, RI 02903<br>861-8200<br>Fax: 861-8210 |
| Thomas A. Palombo, Esq.<br>Attorney General's Office<br>150 South Main Street<br>Providence, RI 02903<br>274-4400<br>Fax: 222-2995 | Christine M. Curley, Esq.<br>275 Beacon Drive<br>North Kingstown, RI 02852<br>294-0847 |
| Raymond A. Marcaccio, Esq.<br>55 Dorrance Street<br>Suite 400<br>Providence, RI 02903<br>861-2900<br>Fax: 861-2922 | Thomas R. Bender, Esq.<br>Hanson Curran LLP<br>The Francis Building<br>146 Westminster Street<br>Providence, RI 02903 |
| Louis Saccoccio, Esq.<br>Office of the General Counsel<br>University of Rhode Island<br>Green Hall, 35 Campus Avenue<br>Kingston, Rhode Island 02881<br>Fax: 874-44803 | |

I certify that I faxed and mailed a copy of this Complaint to the above named counsel of record on the 1st day of March, 2006.

Kandy M Marchand