# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC. AND STEVEN BROWN, INDIVIDUALLY AND IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC., Plaintiffs | |
| v. | C.A. No. 04-487/T |
| ROGER N. BEGIN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE RHODE ISLAND BOARD OF ELECTIONS, ET AL., Defendant | |
| THE GREATER PROVIDENCE CHAMBER OF COMMERCE, Intervenor | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS FEES

Plaintiffs Rhode Island Affiliate of the American Civil Liberties Union and Steven Brown (collectively "Plaintiffs") submit this Supplemental Memorandum and the Affidavits of Howard Merten, Joseph V. Cavanagh, Jr. and Benjamin V. White, III pursuant to L.R. Cv. 54.1 in further support of their motion for an award of attorneys fees as the prevailing party under 42 U.S.C. § 1988.

### A. Prevailing Plaintiffs Are Entitled To Fee Awards in Civil Rights Actions

The Civil Rights Attorney's Fees Award Act, 42 U.S.C. §§ 1988 provides, in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs.

Although this provision is couched in permissive terminology, prevailing plaintiffs in a civil rights action are presumptively entitled to fee awards. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001) (citing cases); *United States v. Cofield*, 215 F.3d 164, 170 (1st Cir. 2000) ("[T]he Supreme Court has interpreted the language of section 1988 to require attorney's fees save for rare cases in which special circumstances would render an award unjust." (citations omitted)).

Here, there are no special circumstances rendering an award of fees unjust. Thus, the inquiries here are whether the party seeking the fees was a prevailing party and whether the fees are reasonable.

**B. <u>Plaintiffs Are "Prevailing Parties."</u>**

"A plaintiff is a prevailing party when she "has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 791-92 (1989). *See also Gray v. Romeo*, 709 F. Supp. 325, 326 (D.R.I. 1989) (citing *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978). "A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992).

The District Court issued a 38-page decision in this matter. The court's Judgment declared that:

> the "not acting in concert" language of R.I.G.L. § 17-25-10(b) violated the First Amendment to the extent it applied to expenditures in support of or in opposition to ballot questions;

> R.I.G.L. § 17-25-10.1(h) and (j) violate the First Amendment to the extent they prohibit corporations from making contributions from their own funds;
>
> the dollar limits on contributions set forth in R.I.G.L. § 17-25-10.1(a) apply only to candidate and not ballot question elections; and
>
> the State of Rhode and the Board of Elections are permanently enjoined from enforcing the above provisions to the extent declared unconstitutional.

In short, Plaintiffs received substantial declaratory and injunctive relief as a result of this litigation. Plaintiffs have "materially altered the legal relationship," *Texas State Teachers Assn.*, 489 U.S.S. at 792-3, between the Plaintiffs and the Defendant so as to remove unconstitutional restrictions on campaign contributions with respect to ballot questions, and to remove the threat of potential prosecution for election law violations. Plaintiffs are prevailing parties for purposes of 42 U.S.C § 1988.[1]

**C. <u>Plaintiffs Method of Calculating Fees Is Appropriate</u>**

Both the Supreme Court of the United States and the First Circuit use the lodestar approach to calculate attorney's fees. Under this approach, the number of hours reasonably expended on the litigation is multiplied by reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, (1983); *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190 (1st Cir. 1996). The lodestar fee is presumptively reasonable. *See Lipsett v. Blanco*, 975 F.2d at 937 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The amount of the award should be the same amount that would have been charged to a fee-paying client. *Hensley*, 461 U.S. at 431.

---

[1] The fact that Plaintiffs did not prevail on every claim brought does not alter their status as a prevailing party. *Texas State Teachers Association*, 489 U.S. at 792-93. *See, also*, the discussion of Level of Success, *infra*, at pp 8 to 9.

In *Hensley v. Eckerhart*, the Supreme Court set out 12 factors involved in determining the amount of the fee. Those factors, initially set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5 Cir. 1974) are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The factors critical to this case are dealt with below.

1. *The time and labor required.* To calculate the reasonable hours expended, courts ascertain the time counsel actually spent on the case and subtract from that figure any hours which might be "duplicative, unproductive, excessive, or otherwise unnecessary." *Id.* (quoting *Grendel's Den. Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984)). To determine the reasonable hourly rate, courts utilize the "prevailing market rates in the relevant community . . . ." *Andrade v. Jamestown Housing Authority*, 82 F. 3d at 1190.

In accordance with *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir. 1984), and its progeny, Plaintiffs' counsel here have based their claimed hours on reasonably detailed contemporaneous time records. Further, in compliance with their obligations under *Hensley*, they have properly, indeed liberally, exercised billing judgment to remove from the fee application work performed on even arguably non-compensable activities (such as responding to inquiries from the press) and clerical tasks, and they have written off time devoted to even arguably duplicative, non-productive or excessive activities. *See Hensley*, 461 U.S. at 434. Time has been reduced for lead counsel, Attorney Merten, where appropriate. Time devoted to a

motion for temporary restraining order late in the case was eliminated entirely, as was time devoted to joint efforts with the defendant Board to resolve this matter through legislative action, even though that action occurred while this suit was pending and even though the Board brought its attempts to seek a legislative solution to the Court's attention.

Also eliminated from this fee application is substantial time billed by Associate Michael Sweeney of Partridge Snow & Hahn to this matter. Attorney Sweeny's participation in all aspects of this case from May 16, 2005 onward, and in particular his research and early drafting efforts, were invaluable. Nonetheless, in an effort to present a decidedly reasonable application for fees, Plaintiffs have not requested compensation for any of his time. With the exception of time billed by Attorney Merten, associate Michael Daly, and paralegal Deana M. Ardente of Partridge Snow & Hahn, Plaintiffs has excluded all time billed to this matter by other attorneys and paralegals from both Vetter & White and Partridge Snow & Hahn to avoid any claim of duplication or non-productive results.

Billing discretion has been exercised to ensure that the fee charged is reasonable and in line with the work required and the results obtained.

2. *The fee arrangements and hourly rate.* Plaintiffs counsel undertook this matter as a volunteer cooperating attorney on behalf of the RIACLU. Plaintiffs' counsel's compensation is based entirely upon any fee awarded pursuant to 42 U.S.C. §§ 1988.

The hourly rates requested here are $250 to $265 for Howard Merten, Esq. for work done from September 2004 to the present, $135 to $145 for Michael Daly for work done from September, 2004 to May, 2005, and $85 per hour for Deana M. Ardente, a paralegal at Partridge Snow & Hahn.

These hourly rates are reasonable. They reflect rates at or below Plaintiffs' counsel's usual hourly rates, counsel's experience and expertise and the prevailing market rates

in the relevant community. Plaintiffs have submitted the affidavits of Attorney Joseph V. Cavanagh, Jr. and Benjamin V. White, III in support of this application. Both attorneys have been members of the Rhode Island Bar for more than thirty years and are familiar with the hourly rates prevailing in the Rhode Island market. Both attest to the fact that the rates sought here are reasonable and appropriate and well within the range of hourly rates charged by attorneys of comparable experience. A Rhode Island Superior Court decision from 2004 ratifies the opinions expressed in the affidavits. In *Shoucair v. Brown*, 2004 R.I. Super. LEXIS 162 *55 (2004), the Rhode Island Superior Court (Gibney, J.) found, based on expertise of the counsel and the court's knowledge of prevailing hourly rates in Rhode Island, that an hourly rate of $275 was reasonable in a complex employment case.

The requested hourly rates also are in line with earlier fee awards for Attorney Merten in analogous cases, taking into account adjustments for the passage of several years. In October, 2001 Presiding Justice Rodgers approved a fee application for Attorney Merten in another Rhode Island A.C.L.U. sponsored suit based upon an hourly rate of $220 for work done more than five years ago. The state defendants in that suit did not object to the appropriateness of that rate. Likewise, In November 2001, plaintiffs' counsel sought fees at an hourly rate of $220 per hour in *Bonas v. Town of North Smithfield*, C.A. No. 01-241. Defendants' counsel, Marc DeSisto, agreed to the fee application and did not raise an objection to the hourly rate.

A reasonable attorney's fee under 42 U.S.C. § 1988 is one calculated on the basis of rates in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, which also grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee paying client. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989).

3. *The novelty and difficulty of the issues.* The issues presented in this case were complex and difficult on a number of fronts. Campaign financing regulation has been described as a "complicated maze of legal prohibitions, restrictions, and disclosure requirements." 32 CAP. U.L. REV. 839 (Summer, 2004). In part, the complexities are the result of inherent tensions between important and fundamental interests: "This tension between preserving the constitutional guarantee of free speech in the political arena and making legitimate efforts to prevent political corruption in the system creates a serious challenge that society and the courts must struggle to resolve." *Id.*

This litigation raised complex issues respecting the interplay between the numerous Rhode Island statutory provisions and various constitutional rights. It required mastery of a confusing statute and a myriad of contradictory Advisory Opinions. The Board of Election's history of adopting, revoking and readopting regulations in this area stands as eloquent testimony to the complexity of the issues raised in this arena. Plaintiffs spent significant time and effort researching and documenting the Board's various interpretations and enforcement activities respecting the concept of "in concert" activities. At one point, the court in this action denied Plaintiffs' motion for a temporary restraining order, in part on the grounds that Plaintiffs had not shown a likelihood of success on the merits, particularly in light of the complexities involved in reading the different statutory provisions together.

Initially, defendants contested even those issues apparently controlled by existing U.S. Supreme Court precedent. See, Defendants' Answer, ¶ 44-47, 49-52. See also Exhibits 37, 40 and 60, pp. 18 and 28, submitted with Plaintiffs' Trial Memorandum. Throughout this litigation, defendants continued to insist that they could not agree to the entry of a court order or concur that the statutory provisions struck down by this court were unconstitutional. Moreover, they raised new and complex issues and factual arguments respecting their explanations of their

"enforcement" of these restrictions, which they claimed were distinct and somehow different from their own written regulations, forms, handouts and website pages. They also presented to the Court proposed (but not yet adopted) legislation and regulations to deflect the impact of the cases cited by Plaintiffs. These revised positions and deflecting tactics required not only further research, but also further factual investigation, discovery and presentation to provide the Court with a complete picture of the record of the Board's pronouncements and enforcement.

4. *Level of Success.* As a result of this lawsuit, Plaintiffs and others were freed to coordinate their political activities and expenditures without fear of criminal prosecution for having been found to have impermissibly acted in concert. This significantly levels the playing field in Rhode Island for small political actors whose political activity and associational rights were burdened in a way that big-money players acting unilaterally were not. As one example, before injunctive relief issued in this case, small businesses could not combine their efforts and money to combat the ballot advocacy efforts of a corporate giant who, under existing law, could spend unlimited amounts from its own coffers. In the political atmosphere in Rhode Island today, with the ballot questions presently on the horizon, this relief is of enormous importance.

As for the individual plaintiff in this action, Plaintiff RI ACLU, a non-profit corporation was freed to make contributions without threat of allegations of election law violation (which actually happened in the 2004 election). It was freed to coordinate its political efforts, plan and strategize with like-minded entities, and coordinate expenditures. So, too, were the numerous amicus curiae who added their voices to the cry to remove the unfair restrictions on ballot advocacy. The Rhode Island Foundation, the United Way of Rhode Island, Common Cause and the University of Rhode Island all cried out for relief from the prohibitions and limitations placed on them by the statutes this Court has now declared unconstitutional.

Plaintiffs did not obtain relief requested regarding the elimination of PAC filing requirements. However, the Supreme Court stated in *Hensley*:

> In other [civil rights] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 461 U.S. 435. Where a plaintiff has obtained excellent results "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley,* 461 U.S. at 435.

In this case, plaintiff achieved substantial and important success. Moreover, all claims arose from a common set of facts. The Court noted in the ruling on plaintiffs' request for a temporary restraining order that the issues raised in this statute were intimately intertwined and the Court could not assess the constitutionality of any one provision in a vacuum. Given the nature of the claims, the statutory architecture, the conflicting and overlapping constitutional interests, the PAC requirements had to be read together and analyzed with the "in concert" limitations and other restrictions in the statute. Certainly, the time spent by plaintiffs' counsel in this matter cannot be segregated out into discrete efforts related to "PAC" claims and to "in concert," corporate contribution and contribution limitation claims[2].

---

[2] In any event, the substantial reduction in the fees requested already evidenced by Exhibit B2 and discussed in the Affidavit of Howard Merten would more than adequately cover any adjustment appropriate here.

Since "plaintiffs prevailed on the merits and achieved excellent results ..., plaintiffs' counsel are entitled to an award of fees for all time reasonably expended . . . ." *Hensley*, 461 U.S. at 431; *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986).

## CONCLUSION

Plaintiffs' efforts in pursuing this lawsuit have resulted in sweeping aside unconstitutional provisions of state law embodied in the regulations and publications of the Board of Election that stood in the way of many organizations' full and equal participation in ballot question advocacy. They have also brought renewed efforts and focus to bear by the Board of Elections and General Assembly to remedy problems that have lingered for years because of a fundamentally flawed statue.

Plaintiffs prevailed. They are entitled to an award of fees. The hours spent and hourly rates are reasonable. Plaintiffs' counsel took on this case as a volunteer and will be compensated only through an award of fees. This Court, for all the reasons set forth above and in plaintiffs' supporting affidavits and exhibits, should award plaintiffs the fees requested.

RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION,
INC. AND STEVEN BROWN,
INDIVIDUALLY AND IN HIS
CAPACITY AS EXECUTIVE DIRECTOR
OF RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION,
INC.,

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Howard A. Merten (#3171)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: June 6, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS FEES was mailed, postage prepaid, on this 6th day of June, 2006 to:

Raymond A. Marcaccio, Esq.
Oliverio & Marcaccio, LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

James W. Ryan, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Thomas A. Palumbo, Esq.
Assistant Attorney General
Office of Attorney General
150 South Main Street
Providence, RI 02903

[signature]

859687_1/999998-75