**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND AFFILIATE AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually and in his Capacity as Executive Director of Rhode Island Affiliate, American Civil Liberties Union, Inc.** | : | |
| ***Plaintiffs*** | : | |
| **Vs.** | : | **C.A. No. 04-487T** |
| **ROGER N. BEGIN, in his Official Capacity as Chairman of the Rhode Island Board of Elections, and THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, in their Capacities as Commissioners of the Rhode Island Board of Elections and GEORGE BOWEN, in his Official Capacity as Acting Executive Director** | : | |
| ***Defendants*** | : | |
| **THE GREATER PROVIDENCE CHAMBER OF COMMERCE** | : | |
| ***Intervenor*** | : | |

## BOARD OF ELECTIONS'MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR LEGAL FEES

## INTRODUCTION

Now comes the State of Rhode Island Board of Elections ("Board") and submits this memorandum of law in opposition to the petition by the American Civil Liberties Union ("ACLU") for an award of attorneys fees pursuant to 42 U.S.C. § 1988.

In assessing the ACLU's petition, this Court must determine whether, and to what extent, that its decision has materially changed the legal positions and conduct of the parties. On

a broad level, the ACLU sought the right to be able to solicit contributions from its members, and the public, for monies to be used in support or opposition to ballot measures. The ACLU challenged the statutory requirement that it be required to form a political action committee ("PAC") before soliciting such contributions. On a specific level, the ACLU sought the right to be able to contribute $1500 to the Right to Vote Campaign in connection with a 2006 ballot measure. The Court embraced the Board's position on both of these aspects of the lawsuit and recognized the state interest in requiring the formation of a PAC before a person, including the ACLU, can solicit or make a contribution towards a ballot measure. The Board did not contest the ACLU's other challenges in connection with (1) the perceived $1,000 limit on expenditures for ballot advocacy, and (2) the prohibition imposed on corporations from making direct expenditures and contributions on ballot advocacy. Moreover, the Board agreed not to enforce those provisions against the ACLU and, instead submitted legislation to the General Assembly to specifically address those issues.

Since the Court's decision did not materially change the legal positions of the Board on the primary issue in dispute, the ACLU is not entitled to an award of legal fees.

## RELEVANT FACTS AND TRAVEL OF CASE

On November 18, 2004, the ACLU filed this lawsuit against the Board. The complaint contained three core challenges to language contained in Title 17, Chapter 25 of the Rhode Island General Laws: (1) the prohibition on corporate contributions set forth in R.I. Gen. Laws § 10-25-10.1(h)(j) (Count I of the Complaint); (2) the contribution limits set forth in R.I. Gen. Laws § 17-25-10.1(a) (Count II of the Complaint); and (3) the statutory requirement that entities "acting in concert" in connection with expenditures, solicitations, contributions and expenditures

with respect to ballot questions (Counts III, IV, V and VI of the Complaint). The Court summarized these challenges as follows:

> (1) the provision in subsection 10(b) that exempts only persons "not acting in concert with any other person or group" from the prohibition against expenditures by any person or entity other than a PAC;
>
> (2) the provisions in subsections 10.1(h) and (j) that prohibit corporations and any other entities besides PACs from making contributions with respect to ballot questions; and
>
> (3) the provisions in subsection 10.1(a) that establish dollar limits on the contributions that may be made with respect to ballot questions by PACs and other persons permitted to make such contributions.

April 25, 2006 Decision at 6.

The ACLU argued that it had:

> expended and solicited contributions, and intends in the future to expend and solicit contributions, to pay for such things as printing and distribution of pamphlets, papers, fact sheets and similar materials, and for purchasing advertising space and time in the print and broadcast media in order to disseminate its view with respect to ballot questions.

*See*, Plaintiff's Complaint at ¶ 11. The ACLU further alleged that people "have made, and will make, contributions to the RI ACLU generally, and specifically for the purpose of ballot question advocacy, in order to effectively express their views on such issues and exercise their First Amendment rights of expression and association." *Id.* at ¶ 12. The ACLU "plans to solicit its members and the public at large for contributions and also to make expenditures for the support or defeat of ballot questions in future elections, as it has done in prior elections." *Id.* at ¶ 36.

From the outset, the Board posited that the PAC requirements were legal, reasonable, and did not impose an undue hardship upon the ACLU. The PAC requirement is necessary to achieve an important state interest, which is to ensure that the public knows the sources of funds

expended or contributed with respect to ballot questions in order to assist voters in evaluating the ballot question.

With respect to the $1,000 limit and the corporate prohibitions, the Board notified the ACLU that it did not seek to enforce these provisions. *See*, Exhibit A, January 10, 2005 letter from Board counsel to ACLU counsel. While the Board could not, as a creature of the General Assembly, declare that the challenged portions of the legislation were illegal, the Board was willing to not enforce those provisions in connection with the ACLU. Despite the concessions by the Board, the ACLU remained steadfast in its claim that the reporting requirements were illegal.

During the pretrial conference on April 25, 2005, the Board made clear that it would defend the reporting requirements contained in Chapter 25 of Title 17. The Board also made clear that it would not seek to prohibit corporate contributions on ballot measure nor the perceived $1,000 limit. The ACLU's counsel argued that even in light of those admissions, the case needed to be prosecuted since the Board would not voluntarily stipulate to a judgment on Counts I and II of its complaint and (2) any reporting requirements imposed in the context of a ballot question violated the contributor's right of association and confidentiality. Essentially, the ACLU sought anonymous advocacy.

The Board focused its defense on the reporting requirements and it is on that issue that there existed a contested case between the parties. Given the narrow scope of the contested case, the parties conducted limited written discovery, no depositions, and submitted the case for trial on the briefs.

After the trial briefs were submitted, the Court took the unusual step of publicly seeking *amicus* briefs. As set forth in the letter of January 6, 2006, the Court expressed its concern that

"the constitutionality of some of the challenged statutes are not being defended by any of the parties." *See,* Exhibit B. In an effort to "fully air" the issues, the Court published an "Invitation to Seek Permission to File *Amicus Curiae* Briefs." *See,* Exhibit C. The fact that the Court submitted the public invitation for amicus briefs supports the Board's position that there was no opposition between the parties on two significant challenges in the Complaint. Certainly, there was no need to expend monies in connection with prosecuting Counts I and II of the Complaint since the Defendant did not oppose the ACLU's position. The Board simply could not, of its own accord, declare illegal those sections of Title 17, Chapter 25.

**THE DECISION**

The limited extent to which the ACLU suceeded on its claims against the Board is made clear from a review of this Court's decision. With respect to the PAC requirement, this Court ruled that the "'not acting in concert' limitation contained in subsection 10(b) is unconstitutional to the extent that it prevents a person from making direct expenditures with respect to ballot questions if such person is acting in consultation or cooperation with others." Decision at 25. Direct expenditures "are viewed as a form of core political expression…" *Id.* at 23 (citations omitted). Any prohibition on persons or groups who wish to coordinate their efforts to make direct expenditures with others, by requiring the formation of a PAC, violates one's first amendment rights. In so ruling, the Court did not disturb the reporting requirement with respect to contributions being made to PACs, pursuant to R.I. Gen. Laws § 17-25-10(a)(3). *Id.* at 25. "Requiring that all contributions be funneled through PACs prevents contributors from circumventing the reporting requirements by contributing funds to another person or entity that could extend the funds without having to report the source." *Id.*

This Court next discussed sections 10.1(h) and (j) and held that to the extent that such sections "prohibit corporations or other non-PAC entities from making contributions from their own funds in order to support or oppose ballot measures, subsections 10.1(h) and (j) are unconstitutional." Decision at 27.[1] The Court also recognized that the Board and the State did not attempt to defend the outright prohibition against contributions made by a corporation from its own funds in order to support or oppose ballot questions. *Id.* at 27.

The Court next discussed the PAC requirements set forth in the Rhode Island General Laws with respect to making contributions to non-PACs and receiving contributions from non-PACs. The ACLU challenged the restriction imposed by the Board to form a PAC before making contributions to entities other than PACs and preventing corporations from receiving contributions unless they formed PACs. The fact that:

> …contributions can be made only to PACs does not directly burden the exercise of First Amendment rights in any significant way, unless one accepts the dubious premise that a person has a constitutional right to make political contributions to entities that cannot lawfully receive them.

*Id.* at 29 (citations omitted).

The burden of establishing a PAC "is justified by the state's interest in public disclosure of the sources of campaign funds." *Id.* at 30. The Court recognized an essential defense asserted by the Board which was to ensure that monies not be funneled between entities whereby the only entity reporting such transfer of monies is the one that ultimately makes payment for a ballot measure expenditure: "By permitted contributions to be made only to PACs and by requiring PACs to report all contributions received, the 'funneling' requirement furthers the state's interest in public disclosure of campaign funding sources." As the Court explained:

> …unless contributions are reported at each step along the way, the true source of the funds may be concealed from public view. A person could make secret

[1] The Court also noted that the prohibition contained in subsection 10.1(h) applied only to candidate elections. *Id* at 26. Therefore, there was no legal prohibition on corporate contributions for ballot measures.

> contributions in support of or opposition to a ballot question by forming a corporation or other entity, providing funds for that entity, and causing that entity, in turn, to expend the funds or to contribute them to another entity that makes the expenditure.

Decision at 30-31.

The Court rejected the ACLU's contention that the requirement to form a PAC, before soliciting or receiving contributions, is an undue burden. The ACLU argued that the designation of a treasurer, keeping records of contributions received and expenditures made, and reports generated to the Board, all constituted undue burdens. The Court rejected this argument out of hand, noting that any additional requirements necessary with the PAC requirements passes "constitutional muster because the burden that they may impose is relatively modest and because the 'funneling' requirement appears to further the state's interest in public disclosure of the sources of campaign funding" *Id.* at 32. In the absence of such reporting requirements, "there will be no way for voters to know the source of those contributions." Decision at 33. Thus, the Court upheld the statutory requirement that the ACLU establish a PAC before raising campaign funds regarding ballot measures in order to "further a sufficiently important state interest in providing voters with information regarding the sources of funds used to support or oppose ballot measures." *Id.* at 33.

Finally, the Court disagreed with the ACLU's challenge to subsection 10.1(a) and its prohibition on contributions to a single recipient of more than $1,000 in a calendar year. The ACLU asserted that this subsection limited the amount that persons can contribute in connection to a ballot measure to $1,000. *Id.* at 34. The Court recognized that the Board and the Attorney General did not have to defend such a limit, to the extent that it applies to ballot questions. *Id.* at 34 - 35. However, the Court concluded that subsection 10.1(a) is inapplicable to contributions relating to ballot measures. Subsection 10.1(a) does not contain any reference to ballot questions

and refers exclusively to contributions to candidates, PACs, and political party committees. Decision at 35-36.

Consequently, the essence of the challenge upon which the ACLU was successful related to the "acting in concert" language and the Court's determination that the prohibition of acting in concert in connection with *expenditures* has no legitimate state interest and is therefore unconstitutional. The Board did not seek to prohibit such coordination on expenditures, unless it involved a transfer of money, in which case a PAC needed to be formed. Again, this Court fully recognized the need for a PAC in such circumstances.

## ARGUMENT

### A. The Plaintiff Is Not a Prevailing Party Because There Has Been No Material Change to the Relationship of the Parties

Defendants acknowledge that the 'prevailing party' standard is generally interpreted broadly under 42 U.S.C. § 1988. See *Farrar v. Hobby*, 506 U.S. 103, 109 (1992); *Hensley et al. v. Eckerhart et al.*, 461 U.S. 424, 433 (1983). Notwithstanding this general interpretation, the Supreme Court has also held that "the entry of a declaratory judgment in a party's favor does not automatically grant prevailing party status under § 1988." *Farrar*, 506 U.S. at 110, *quoting Rhodes v. Stewart*, 488 U.S 1, 3 (1988). Where a party succeeds in a declaratory judgment action, that party may attain prevailing party status "*if and only if* the judgment affects the behavior of the defendant toward the plaintiff." *Rhodes*, 488 U.S. at 4. As the Supreme Court asserted in *Farrar*: "[i]n short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar*, 506 U.S. at 112. *See also Maine School Administrative District No. 35 v. Mr. and Mrs. R*, 321 F.3d 9, 14 (1st Cir. 2003) (holding that

"[t]he party's success cannot be a hollow victory; it must materially alter the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other"). The Supreme Court has gone so far as to say that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar*, 506 U.S. at 113.

In *Texas State Teachers Association, et al. v. Garland Independent School District et al.*, the Supreme Court noted the hollow victory that would have been achieved by the teachers association if their only success rested on the Court's vagueness determination relative to a School District policy. 489 U.S. 782, 791 (1989). The Court noted that there was no evidence that the policy in question had been enforced against the plaintiffs. *Id*. The Court opined that under those circumstances, that limited success would not have rendered the teachers prevailing parties. *Id*.

In 2001, the First Circuit heard the case of *Gay Officers Action League, et al. v. Puerto Rico*, which, among other claims, was a challenge to the constitutionality of a police department regulation that prohibited police officers from associating with homosexuals. 247 F.3d 288, 291 (1st Cir. 2001). The court determined that the regulation was unconstitutional. Thereafter, the plaintiffs moved for an award of attorney's fees. *Id*. The First Circuit acknowledged that the plaintiffs had "prevailed" to the extent that the regulation has been struck down, however the court noted "obtaining equitable relief does not automatically confer prevailing party status for the purposes of the Fee Act." *Gay Officers*, 247 F.3d at 293. In *Gay Officers*, the First Circuit echoed the Supreme Court's statement in *Farrar*, that "of itself, the moral satisfaction that results from any favorable statement of law cannot bestow prevailing party status." *Id*. at 294, *quoting Farrar*, 506 U.S. at 112.

The success of the ACLU's claim for fees must be viewed from the perspective of how this lawsuit, and the judgment, has changed the legal positions of the parties. It is respectfully submitted that the reporting requirements imposed upon the Board on persons who expend or contribute in connection with ballot measures has not significantly been altered under the statutory scheme challenged.[2] As is evident from the discussion of this Court's decision, *supra*, the ACLU prevailed with the Court's ruling that when a person is merely "acting in consultation or cooperation with others" to make a *direct* expenditure on a ballot measure, such a prohibition is unconstitutional. Decision at 25. However, when a person transfers money to another person, who ultimately pays for an expenditure, the first transfer must be reported as a contribution: unless "contributions are reported at each step along the way, the true source of the funds may be concealed from public view." *Id.* at 30. "A person could make secret contributions in support of or opposition to a ballot question by forming a corporation or other entity, providing funds to that entity, and causing that entity, in turn, to expend the funds or to contribute them to another entity that makes the expenditure." *Id.* at 30, 31.

This is the precise type of "funneling" that the Board sought to prevent and for which the Board sought a reporting requirement. The Board did not take the view in this lawsuit that a mere consultation or cooperation with others required the formation of a PAC:

> The PAC reporting and contribution disclosure requirements are only triggered when funds have been contributed from more than one person for the specific purpose of ballot question advocacy. Furthermore, the Board has begun the process of promulgating rules and regulations in accordance with the

[2] The statute in question has been repealed by the General Assembly, to the extent that it pertained to ballot measures. During the legislative session of 2005, the Board submitted a comprehensive piece of legislation regarding the reporting requirements for ballot measures. A number of public interest groups supported the Board's legislation in 2005, including Operation Clean Government and Common Cause. The ACLU did not support the legislation and testified against the draft legislation. During the 2006 legislative session, the Board once again submitted its legislation on ballot measures to the General Assembly. A number of public interest groups, including the Rhode Island Foundation and Common Cause worked with the Board of Elections and the ACLU to prepare an alternative legislative package on ballot measures. That legislation was passed into law on or about June 27, 2006.

> recommendations set forth in memorandum from its counsel and in accordance with its enforcement history.

Defendant's Trial Memorandum at 5.

The PAC requirement is only triggered where an entity such as the ACLU solicits funds, which this Court has recognized as the receipt of a contribution:

> A review of the statutory language, in light of these well established principals of statutory construction, makes it clear that § 17-25-10.1 of the act is applicable to the RI ACLU and requires that the RI ACLU form a political action committee when it *wants to separately solicit funds for the purpose of ballot question advocacy*.

Defendant's Trial Memorandum at 8 (emphasis in original). "Thus, a corporation is not required to establish a segregated fund or PAC in order to advocate independently for or against a ballot question, but *may use its own existing funds for this purpose*." *Id.* at 8 (emphasis in original).

The Board recognizes that this Court has clearly stricken the application of the "acting in concert" language in certain circumstances, including cooperation between entities on direct expenditures. However, the defense asserted by the Board in this lawsuit is consistent with this Court's finding. Ultimately, the decision has not materially altered the reporting landscape on campaign expenditures and contributions, as the then existent statute was applied and enforced by the Board.

The Court acknowledged in its decision that the Board of Elections did not contest the plaintiffs' challenge to R.I.G.L. § 17-25-10.1(h) and (j). Furthermore, the Court opined that 10.1(h) did not appear to apply to ballot questions. Decision at 26. Notwithstanding this assertion, the Court ruled that 10.1(h) and (j) are unconstitutional "to the extent they prohibit corporations from making contributions from their own funds." Decision at 27. The Board's position relative to these provisions, *i.e.* that it was not seeking to enforce the provisions against

the plaintiffs, illustrates the point that the Court's decision will not change the Board's relationship with the plaintiffs relative to these provisions.

Turning now to the Court's decision relative to R.I.G.L. § 17-25-10.1(a), it is obvious that the plaintiff cannot be seen to have prevailed on this claim because this Court ultimately determined that 10.1(a) did not even apply to ballot questions. Decision at 35 – 36. Similar to the foregoing issue, the Board did not seek to defend the provision relative to ballot questions. Thus, the parties' relationship has not been materially altered with respect to this provision because it does not apply to the plaintiffs and was not defended by the Board.

Because the Court's ruling did not materially change the manner in which the Board regulated ballot measures, the plaintiffs are not prevailing parties in the context of this litigation.

**B. Even If Petitioner Is Determined to be a Prevailing Party, The Degree of It's Success is Limited, Thus Warranting a Reduction in the Award**

The degree of success is the most critical factor to consider when determining the appropriate proportion of an attorneys' fee award. *See Gay Officers*, 247 F.3d at 296; *Texas State Teachers Association, et al., v. Garland Independent School District et al.*, 489 U.S. 782, 789 (1989); *Farrar*, 506 U.S. at 114. *See also, Hensley v. Eckerhart et al.*, 461 U.S. 424, 436 (1983). Given the potential complexities of civil rights litigation, the district courts are charged with evaluating these cases and drafting an award that reflects the success of the plaintiff. *Texas State Teachers Association*, 489 U.S. at 789-90. Such a careful evaluation is especially necessary and important in the context of cases where the plaintiff achieves only limited success. *Id*.

> If … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not

> authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tries the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436.

Even if this Court determines that the plaintiffs are in fact prevailing parties, the attorney's fee award must be reduced in light of the plaintiffs' success relative to its objectives in filing suit and the Board's consistent position throughout the litigation.

The fact that the "not acting in concert" language has been stricken from § 17-25-10(b) can be viewed as a successful result for the plaintiffs. That success is diminished however, in consideration of the fact that the Court clearly upheld the PAC requirement under R.I.G.L. 17-25-10(a) with respect to contributions, a provision that the plaintiffs argued was onerous. Further, the Board's position throughout this litigation has consistently been that it did not intend to enforce 10(b) against corporations making direct expenditures.

Likewise, the Court's ruling relative to § 17-25-10.1(h) and (j) is more akin to a moral victory rather than a complete success for the plaintiffs. First, the Court opined that 10.1(h) does not apply to ballot questions, but held that "to the extent" that the provisions do apply to ballot questions they are unconstitutional. Again, the plaintiffs' victory is tempered by the Board's position relative to these provisions, which was consistent in not asserting a defense to the provisions and not seeking to enforce the provisions against the plaintiffs.

The Court's ruling relative to § 17-25-10.1(a) does not constitute a victory for the plaintiffs in this case because the Court held that it does not apply to ballot questions, as the plaintiffs had asserted in seeking relief.

In light of the plaintiffs' objectives in filing suit, and the Court's multi-faceted decision, the plaintiffs' relative success is not overwhelmingly clear. Given all of the foregoing factors, any award of attorney's fees should be reduced in consideration thereof.

**C. <u>Special Circumstances in this Case Warrant a Reduction in the Fee Award or the Award of No Fee</u>**

The Supreme Court has noted that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Nadeau et al. v. Helgemone*, 581 F.2d 275, 279 (1978), *quoting Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968). The First Circuit in *Nadeau* recognized that a "special circumstance" was found in a Northern District of New York case wherein an antiquated ordinance was challenged and found unconstitutional. *Naprstek et al. v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y. 1977). The *Naprestek* decision not to award attorney's fees was premised, at least in part, on the facts that the statute was rarely enforced and that the City of Norwich's counsel had immediately offered to address the alleged deficiencies in the ordinance upon the suit's commencement, which offer was rejected by plaintiff's counsel. *Naprstek*, 433 F.Supp. at 1371.

Similarly, several other district courts have refused to award attorney's fees when governmental entities either had not enforced the provisions subsequently found unconstitutional, or did not defend said provisions in the context of the litigation. In the case of *Thorsted et al. v. Gregoire et al.*, the United States District Court for the Western District of Washington confronted a challenge to several of the state's ballot access initiatives that contained term limitations. 841 F.Supp. 1068, 1071 (W.D.Wash. 1994). The action was initiated against the Secretary of State and the Attorney General, who had the duty of enforcing the provisions, but who had not yet sought to enforce the statutes. *Thorsted*, 841 F.Supp. at 1083. After ruling that the statutes in question were unconstitutional, the court went on to

consider the plaintiff's motion for attorney's fees. *Id*. In denying the plaintiffs a fee award, the court reasoned that it retained discretion to award fees or not, given the 'special circumstances' language articulated in *Hensley v. Eckerhart*. *Id.* at 1084. The court considered the totality of circumstances of the case and specifically, the following factors:

1. No award is needed to serve the purpose of Section 1988, which is to assure 'effective access to the judicial process.' …
2. No relief has been won under the Section 1983 claims beyond that already awarded under the constitutional claims.
3. The legislation that prompted the suit was adopted by a voters' initiative, not by State officials. The deterrence purpose of Section 1983 (citations omitted) is inapplicable.
4. The defendant officials have not yet enforced Initiative 573. …
5. The State officials have acted in good faith. …
6. This is a case of first impression in federal court…
7. There was no way for the State officials to settle the case by agreement. Even if a stipulation of unconstitutionality had been entered (a most unlikely event), the court would have rejected it. State legislation is presumed constitutional until the contrary is shown.

*Thorsted*, 841 F.Supp. at 1084.

The court determined that the foregoing factors constituted sufficient "special circumstances" to warrant a denial of an attorney's fee award. *Id*.

In *Daggett v. Kimmelman, et al.*, the United States District Court for the District of New Jersey denied a fee award against state defendants who had neither enforced nor defended the reapportionment law at issue, which the court subsequently held was unconstitutional. 617 F.Supp. 1269, 1279 (D.N.J. 1985). Interestingly, the court did assess attorney's fees against the legislature, which intervened in the action to defend the statute (the court noted that the legislature would have been immune from such an award but for the intervention). *Daggett*, 617 F.Supp. at 1279.

The year before the *Daggett* decision, the United States District Court for the District of New Jersey decided a similar case in *May et al. v. Cooperman*, et al. 578 F.Supp. 1308 (D.N.J.

1984). In *May*, the district court considered a challenge to a New Jersey statute that called for the observation of a minute of silence at the commencement of the school day. *Id*. at 1309. The court ultimately determined that the statute was unconstitutional, but refused to enter an award of attorney's fees against the Department of Education and its Commissioner who "had not contested the action, nor had they taken any action to implement, enforce or threaten to implement or enforce the statute." *May*, 578 F.Supp. at 1313. Because of the position the state defendants took throughout the litigation, the court thought it would be unfair to assess an award against them. *Id*. at 1315-1316. In support of its decision, the District Court posited: "to assess fees against them would remove much of the incentive for defendants in like circumstances to take such principled positions in the future." Id. at 1316.

In *Grendel's Den, Inc. v. Larkin, et al.*, the First Circuit considered the argument of the Cambridge License Commission ("CLC"), which asserted that it could not be liable for attorney's fees because it was statutorily bound to enforce the unconstitutional ordinance at issue. 749 F.2d 945, 959 (1st Cir. 1984). While the court did not absolve the CLC on this basis, it did consider it as a relevant argument and reduced the fee award against the CLC by one half. *Id*. at 960.

The Board argues that special circumstances exist in this case to warrant a reduction in the fee award or to deny plaintiff's petition for fees altogether. From the outset of this litigation, the Board has taken a non-defensive position relative to several of the statutory provisions at issue. The Board, understanding its statutory obligations, but not being in a position to redress constitutional infirmities of the legislation it is charged to enforce, could do no more than promise not to enforce the unconstitutional provisions against the plaintiffs, which it did. Further, the Board, much like the state defendants in the foregoing district court cases, did not

present a defense to several of the challenged statutes; a state agency can do no more than that when confronted with a situation challenging legislation it had no part in drafting and was not seeking to enforce. For the foregoing reasons, the Board respectfully submits that special circumstances in this case warrant a finding that the plaintiffs' fee award either be substantially reduced or denied altogether.

## CONCLUSION

For each of the reasons set forth above, the Board respectfully prays that the ACLU's petition for fees be denied.

Defendants,
By their Attorneys,

/s/ Raymond A. Marcaccio___________
/s/ Julie P. Hamil___________________

Raymond A. Marcaccio, Esquire (#3569)
Julie P. Hamil, Esquire (#6887)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax

Dated: August 15, 2006