# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RHODE ISLAND AFFILIATE, AMERICAN CIVIL LIBERTIES UNION, INC. and STEVEN BROWN, Individually And In His Capacity As Executive Director Of Rhode Island Affiliate, American Civil Liberties Union, Inc., Plaintiffs<br><br>v.<br><br>ROGER N. BEGIN, In His Official Capacity As Chairman Of The Rhode Island Board Of Elections, And THOMAS V. IANNITTI, JUDITH H. BAILEY, JOHN A. DALUZ, FLORENCE G. JOHNSON, FRANK J. REGO, RAYMOND A. XAVIER, IN THEIR CAPACITIES As Commissioners Of The Rhode Island Board Of Elections And GEORGE BOWEN, In His Official Capacity As Acting Executive Director, Defendants<br><br>THE GREATER PROVIDENCE CHAMBER OF COMMERCE, Intervenor | C.A. No. 04-487T |

**PLAINTIFF'S REPLY TO DEFENDANT BOARD OF ELECTIONS OPPOSITION TO PETITION FOR LEGAL FEES**

Defendants (the "Board") raise a single objection to the award of fees in this action — that plaintiff did not prevail or, stated alternatively, that plaintiff's level of success did not materially alter the legal relationship between the parties. The Board raises no objection respecting the number of hours, alleged duplicative or excessive hours, the hourly rate, or any supporting documentation or affidavits. Nor does the Board make any attempt to segregate out particular hours it alleges were devoted to plaintiff's one unsuccessful claim.

The Board's argument, however, does not accurately reflect the Board's own

actions leading up to, indeed prompting, this litigation. Nor does it accurately reflect the interrelated nature of the claims or the scope of relief this Court granted.

The Record

When this suit was filed, not only the applicable statute, but the Board's own duly promulgated regulations prohibited corporate contributions and any contributions to PACs over $1,000. Section Board Regulation 8(A)(4) stated:

> **Only Individuals, Political Action Committees and Political Party Committees May Contribute.**
>
> No entity other than an individual, a political action committee which is duly registered and qualified pursuant to the terms of this chapter, political party committee … or an authorized committee of an elected official or candidate … shall make any contribution to or any expenditure on behalf of or in opposition to any candidate, ballot question, political action committee or political party.

(Exh. 60,[1] p. 17). Section 8(B)(4) stated expressly that no corporation — indeed no "business entity" — may contribute funds to support or defeat a ballot question. (Exh. 60, p. 18). The Board's "Summary Chart of Allowable and Prohibited Contributions," appended to its Regulations, reiterated this prohibition. (Exh. 60, p. 28). That same chart indicated that contributions to PACs were limited to $1,000. The chart applied to ballot questions. (Exh. 60, p. 18, n. 10).

In these same regulations, the Board defined PACs to include "any group of two or more persons which accepts any contributions to be used for advocating … the approval or rejection of any question… (Exh. 60, p. 2). The Board declared that the only permissible recipient of contributions to "advocate the approval or rejection of any question" are the treasurers or deputy treasurer of candidates, political party committees or PACs. (Exh. 60, p.

---

[1] Exhibit numbers refer to Exhibits submitted by plaintiff's in conjunction with its Trial Memorandum.

16).

The Board's duly promulgated and published regulations were also replete with references to the Board's position that only persons "not acting in concert with any other person or group" could make expenditures to support or defeat ballot questions. (Exh. 60, pp. 2, 5 and 16).

The Board not only adopted and published these Regulations, it acted to enforce them. Immediately preceding the filing of this lawsuit, the Board officially re-adopted Advisory Opinion 95-01. It did so over the objections of plaintiff. AO 95-01 contained a harshly restrictive and broad definition of "in concert" activity. (Exh. 44).

Despite what it now says, post litigation, to avoid paying fees, documents produced by the Board prove that it actively enforced the prohibition on corporate contributions and "in concert" activities. An October 11, 2000 memorandum states:

> We are getting a lot of questions form the non-profit corporations saying they are being solicited for contributions. I'm sure the solicitations do not stop with non-profit Corps.
>
> I'm quoting the law when I advise them that corporations cannot contribute but they can spend their own money if not in concert with anyone else.

(Exh. 37).

Earlier, in 1993, the Board revised its Regulations in response to the decision in *Vote Choice v. DeStefano*. Nonetheless it reaffirmed its prohibition of corporate contributions — even after it became aware of the decision in *First National Bank v. Bollotti*, 435 U.S. 765 (1978), through the *Vote Choice* litigation. The Board declared, on January 12, 1993:

> Therefore, and henceforth, corporations will be permitted to make independent expenditures (as opposed to contributions to other entities) to influence ballot questions. ***All other provisions of Section 17-25-10.1(j) remain in full force and effect***.

Exh. 55 (emphasis added). Those "other provisions" that the Board declared would remain in "full force and effect" included the prohibition or corporate contributions that this Court struck

down in this action.

The day before this suit was filed, the Board wrote to the plaintiff demanding certain information and quoting the very language challenged in this suit and struck down by this Court — "According to R.I.G.L. § 17-25-10(b), "It shall be lawful for any "Person", not otherwise prohibited by law and not acting in concert with any other person or group …" The emphasis was in the original, put there by the Board. (Exh. 21). After suit was filed, the Board agreed to put any further action with respect to its November 17, 2004 letter on hold, pending resolution of the issues raised in this suit. (Exh. 21).

On January 5, 2005, after suit was filed, Operation Clean Government filed a broad complaint against the RI ACLU and a number of other entities. The complaint relied on, among other things, the statutory provisions challenged in this action — the definition of "business entity," lawful methods of contribution; the limitations on contributions and prohibition on corporate contributions, and the "in concert" restrictions. (Exh. 61, pp. 14-15).

On January 10, 2005, the Board's counsel wrote to plaintiff's counsel about the OCG complaint. The Board attached its letter to its opposition to plaintiff's motion for attorneys fees, purportedly to support the proposition that the Board "did not seek to enforce" the provisions challenged by the RI ACLU in this lawsuit. A close reading of the letter demonstrates that it falls well short of proving that proposition.

First, the letter on its face is in response to an inquiry from plaintiff's counsel (regarding whether there was a need to seek emergency relief). Second, the letter does not state at any point that the Board believes the complaint is meritless. It certainly does not state that the Board rejects the validity of the cited statutes. Instead the letter says the Board will not "*presently*" be taking any action on the complaint. (Emphasis added). It goes on to say the Board will "*review*" the complaint. (Emphasis added). The letter notes that the Board will

advise the RI ACLU of its response to those complaints. It never has. The complaint was never dismissed, at least not insofar as the RI ACLU knows. It hung over the RI ACLU's head throughout these proceedings.

Throughout the pendency of this action, the Board never changed a single one of its Regulations incorporating, parroting and enforcing the statutes this court ultimately struck down. What those regulations said when suit was filed is what they said when this Court issued its decision: (1) that corporate contributions were prohibited; (2) that contributions were limited to $1000 directed to PACs and (3) that in concert activities were prohibited. Indeed, in its answer, the Board denied the allegations that these provisions were unconstitutional. Answer, ¶¶ 44-67.

<u>The Law</u>

Defendants' argument that plaintiff did not significantly alter the legal relationships between the parties ignores the historical record. It ignores the Board's own actions, correspondence and regulations. The Court must measure the impact of its decision on the legal relationships that actually existed, and not the Board's *ipse dixit, post hac* litigation strategy.

For this reason, the cases that the Board cites to support the argument that fees should not be awarded against defendants who do not enforce statutes are inapposite. Nor do they offer the support the Board hopes for in any event. For example, in *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d, 288, 294-95 (1st Cir. 2001), the Court actually rejected defendants' argument that fees should not be awarded because plaintiff attacked an anachronistic statute that defendants never intended to enforce. The First Circuit noted that the defendant "never repudiated the regulation before the Plaintiff challenged it, and the record contains evidence, credited by the district court, of its chilling effect on First Amendment

Rights." *Id.* To the extent that the defendants' intentions with respect to enforcement differed from its public pronouncements, the affected parties had no way to know that. *Id.*

That reasoning applies in spades here. Far from repudiating the challenged statutes, the Board incorporated them into their regulations and quoted them to the public. It adopted much stricter interpretations of the "in concert" concept (over the RI ACLU's objection) and then wrote to the RI ACLU quoting and underlining that "in concert" language for emphasis. Even when suit was filed, the Board denied the challenged statutes were unconstitutional.

Far from supporting its objection, the Board's unofficial, unadopted post-litigation transformation of its "enforcement" policy is actually further proof that plaintiff has ***prevailed***. It demonstrates that this lawsuit has altered the legal relationships between the parties and more pointedly, the Board's policies themselves. If plaintiff had not filed this suit, the Board's regulations, public pronouncements, advice to callers and written Advisory Opinions would have stood for all the world to see as the only regulatory interpretation on these provisions. *See, also, Daggert v. Kimmelman*, 617 F. Supp. 1269, 1278-79. (D.N.J. 1985) (awarding fees against legislature defendants, but not defendants who neither defended nor enforced the challenged provisions).

The Board's treatment of AO 95-01 offers the most compelling example of this changed relationship. It was the re-adoption of this Advisory Opinion by the Board, over the objection of both the RI ACLU and Greater Providence Chamber of Commerce, that prompted both of these parties to sue. The Advisory Opinion's broad definition of "in concert" activity, and the Board's renewed efforts to enforce that concept vigorously, exacerbated the constitutional deficiencies at the center of this suit. After suit was filed, the Board abandoned the very action that prompted the suit. The Board now points to its abandonment of that opinion as grounds for not awarding fees. The cases the Board cites stand for no such proposition.

Further, the record in this case is that the world at large had serious concerns about the Board's position and the statutory language it tracked. The record before this court was uncontradicted that not only the RI ACLU, but also the Rhode Island Foundation and the United Way were concerned about violating the express statutory language at issue here. Each refrained from making specifically-identified, sizeable contributions in excess of $1,000 to ballot question advocates because of the very statutory provisions challenged and struck down in this action. See Affidavits of Mr. Matusiak and Allan Stein. See, also, Exh. 63, RI ACLU Supplemental Interrogatory Answer No. 3.

The Board correctly points out that plaintiff did not prevail on one claim for requested relief. The court upheld the requirement that contributions go through Political Action Committees ("PACs"). However, in the context of the court's other rulings, even that decision clarified the rules pertaining to persons and entities interested in participating in ballot question advocacy. The Court's ruling eliminated the confusion surrounding "in concert" activity.

Under the Board's prior interpretation and the existing statutes, PACs were required whenever individuals acted "in concert." The trigger for forming a PAC, at least according to the Board, was the broad language of AO 95-01 and R.I.G.L. §17-25-23. The Court's ruling makes clear that the trigger for assuming the burden of forming and acting through PACs is contributions, not "in concert" activity. That is an enormous leap forward and one that the RI ACLU fought hard to obtain.

For example, in its Trial Brief, RI ACLU argued:

> Read collectively, these standards compel the conclusion that any kind of collaborative campaigning on ballot questions – by individuals with like interests, by community groups, by businesses affected by a proposal, or by combinations of any of the above – is prohibited. Once one person or group consults with another about their plans or needs, about who is a good graphic designer, about the best way to communicate a political message or where to concentrate their efforts, a regulatory switch is flipped. These entities are acting "in concert." The regulatory restrictions

and burdens kick in.

See also, Trial Brief, pp. 41-42; Complaint ¶¶ 62-66.

Following Supreme Court precedent, the First Circuit has declared that:

> When a civil rights suit consists of multiple claims, and when the plaintiff prevails on some but not on others, the plaintiff is entitled to fees for hours worked not only on the successful civil rights claims, but also on other claims involving a 'common core of facts' or 'related legal theories.

*Diaz-Rivera v. Rivera-Rodriquez*, 377 F.3d 119, 126 (1st Cir. 2004). *See, also, Johnson v. State of Rhode Island*, C.A. No. 98-260T, 2000 U.S. Dist. LEXIS 3773, *33-34 (D.R.I. Mar. 22, 2000) ("counsel can be compensated for unsuccessful claims if these unsuccessful claims are sufficiently interconnected with the claims on which plaintiff prevailed").

Here, this Court has already declared that the various portions of this statute are "all related." Transcript of Hearing of Plaintiff's Motion for Temporary Restraining Order, 2/21/06, p. 9 (attached). At that hearing, the Court noted that "it's a very interlocking statute," *Id*. In determining that plaintiff had failed to show a likelihood of success, the Court commented, "One of the difficulties is the difficulty in separating the various sections of the statute that are at issue, how they relate to the remainder of the statute and what impact that would have on the statute as a whole." *Id*. at 20.

The Board notes that plaintiff did not prevail on its argument that the burden of forming and operating through a PAC warrants eliminating those requirements as regards contributions in issue campaigns. However, those same arguments and that same showing was required with respect to the claims regarding "in concert" activities and the burdens on independent expenditures and protected associative activity. The Court ruled in plaintiff's favor on this intimately related issue:

> The "not acting in concert" limitation burdens the exercise of that right of forcing individuals or groups who wish to coordinate their efforts with others to form a PAC in order to make expenditures in furtherance of those efforts.

Memorandum and Order, p. 23.

## CONCLUSION

The results obtained via this lawsuit were important and substantial. The lawsuit vindicated core First Amendment rights in the critical area of issue advocacy. Plaintiff has reviewed and pared its fees and submitted a claim for appropriate and necessary hours. The Court should award plaintiff the attorneys fees as requested.

RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION,
INC. and STEVEN BROWN, Individually
And In His Capacity As Executive Director
Of Rhode Island Affiliate, American Civil
Liberties Union, Inc.,

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

_/s/ Howard A. Merten_________
Howard A. Merten (#3171)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: September 1, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2006, a copy of the foregoing PLAINTIFF'S REPLY TO DEFENDANT BOARD OF ELECTIONS OPPOSITION TO PETITION FOR LEGAL FEES was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the court's cm/ecf system.

Raymond A. Marcaccio, Esq.
Julie P. Hamil, Esq.
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903

James W. Ryan, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/ Howard A. Merten__________________